**STATE of Missouri, Respondent,**

v.

**Herschel FORD, Appellant.**

**No. 57149.**

Supreme Court of Missouri,
Division No. 1.

March 12, 1973.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

Joseph R. Schlozman, Julius Peltzman, Kansas City, for appellant.

SEILER, Judge.

Defendant appeals from his conviction of manslaughter of Oliver Johnson, with a jury assessed sentence of two years' imprisonment. Since this appeal was pending here on January 1, 1972, the effective date of the 1970 amendment to the judicial article, the appeal comes within our exclusive jurisdiction as set by Art. V, Sec. 3, Mo. Const.1945, V.A.M.S., as it existed prior to the amendment.

The controversy on appeal is whether, even on the state's own evidence, there was a justifiable homicide of self-defense, and then, if a case of manslaughter were made, was there error in the instructions in regard to burden of proof on self-defense.

We hold that a submissible case was made, but that the cause must be reversed and remanded because of error on the burden of proof as to self-defense.

The events occurred in a recreational parlor and bar in Kansas City, Missouri on

November 26, 1970, Thanksgiving Day. It was in the afternoon and defendant, upon entering the bar "checked" his .38 caliber revolver with the barmaid in accordance with a long-standing policy of the tavern operator. The evidence is that defendant was 63 years of age. Nothing is said as to his size or weight. He had no previous felony convictions. The deceased was in his late forties or early fifties and weighed around 200 pounds, height approximately 5 feet 10 inches.

There is no dispute that deceased, whom defendant had seen on the streets but did not know, came up to defendant at the bar and asked for money for whiskey. What occurred thereafter in considering whether the state established a submissible case of homicide by criminal agency can best be judged by first giving the substance of defendant's question and answer statement which was put in evidence by the state as part of its case. In his statement, defendant first told about the man coming up and asking for $2.00 for whiskey. Defendant said he had no money. Deceased said he was a goddamned liar, took a knife from his right hand coat pocket, put it to defendant's throat, and patted him down, but found no money. Deceased then moved eight or nine feet away and leaned on the bar. Defendant asked the barmaid for his belongings, saying he had better leave. She gave him the gun and as defendant turned to leave, deceased ran up to him with his hand in his pocket and said "I'll cut your goddamned throat anyway." Defendant was scared, snatched his gun out of his pocket and shot the man, who was about three feet away. Defendant testified in his own defense, but neither his testimony, which was a more elaborate version of his original statement, nor that of a supporting eye witness he produced, was any assistance to the state.

The state called the barmaid and the tavern proprietor as witnesses. They testified they saw no knife, but there was no showing that either one was looking at the two men during the short period of time the final action was taking place.

The state also called one of the customers as a witness. He was there to collect $5.00 owed him by the barmaid. He saw defendant and the deceased arguing and saw the deceased walk up to defendant and pat his pockets as though searching him. At first he didn't think they were mad, but later he saw they were serious. He heard defendant say, "Don't take my money" and then the other man stepped back and said, "You don't have no pistol." They kept arguing and he heard defendant say, "Give me my gun." The barmaid was attending to something else before she complied and defendant said, "Do what I told you". The witness saw her start to get the gun and he then turned and walked away. He did not see her give defendant the gun, nor did he see defendant shoot. He heard a shot, looked back and the man was on the floor. He did not see either man with a knife and he heard no statement that the other man was going to cut defendant's throat. The deceased was patting defendant on his pockets with both hands and would walk up to defendant and then walk back. He heard the deceased say to defendant, "When you see me, we're enemies."

There was no evidence the defendant and the deceased had had any previous encounters. A knife was found in the deceased's right hand coat pocket. The knife had a three and half inch blade, but was not spring operated.

After the shooting the proprietor said he was going to lock the door, call the police and for no one to leave, but defendant said no one was going to lock him in the place and left the premises. Defendant drove away in his automobile, threw the gun out within a few blocks, called his employer and told him what had happened and then called the police, saying he would surrender himself the next morning, which he did.

The defendant contends that the state's own evidence established the killing was justifiable and under State v. Rash, 359 Mo. 215, 221 S.W.2d 124, (1949), the conviction should be reversed, while the state says it adduced substantial evidence inconsistent with defendant's theory of justification, arguing that for the homicide to have been justified the "decedent must have been brandishing a knife prior to the killing", whereas the testimony of the proprietor and the customer was to the contrary.

■ The state relies on the answer "No" made by the proprietor to the question whether he saw deceased waving a knife or saw any knife before the killing. Careful examination of the testimony shows the answer is of no probative significance, because it was not established that the proprietor was observing the participants at any of the pertinent times. Without such base having been established, his testimony that he saw no knife does not constitute proof that the deceased did not use a knife against defendant's throat the way defendant said in his statement.

■ Were it not for the testimony of the customer, we would agree with defendant's contention. But the customer testified he was watching the men in their first encounter and he saw no knife in decedent's hands or at defendant's throat. So the fact is that defendant was contradicted in one of the important aspects of his justification—the occurrence of preliminary advances by deceased, with a knife pulled out of his right hand coat pocket, held with point against defendant's throat which caused defendant to fear for his life when, as he asserted, decedent came at him a second time, with hand in right hand coat pocket, saying he was going to cut defendant's throat anyway.

While it is slender, we hold the above makes a submissible case of manslaughter, under the statutory definition, Sec. 559.070, RSMo 1969, V.A.M.S., and State v. Ayers, 470 S.W.2d 534 (Mo. banc 1971). It cannot be said as a matter of law that what occurred here was a justifiable homicide and nothing else. That was a question for the jury under proper instructions.

On the instruction point, the state's main verdict directing instruction was No. 3. This presented the proposition that if the jury found beyond a reasonable doubt that defendant caused the death of the deceased by shooting him, the jury would find defendant guilty of manslaughter unless the jury found from the evidence "by the greater weight thereof, that the defendant acted in self-defense as submitted in Instruction No. 4."

The instruction went on to say that if the jury did not find from the evidence beyond a reasonable doubt that defendant shot deceased, then the jury should find the defendant not guilty of manslaughter (this point was not in dispute. Defendant admitted he shot the deceased and there was no contention the shot did not cause death). The instruction closed by saying that in determining whether defendant was guilty of manslaughter, the jury must consider other instructions submitting whether or not defendant acted in self-defense and then went on to set forth the punishment which the jury would fix if defendant were found guilty.

■ This instruction was prejudicial error because it gave the jury the idea that the defendant would have to convince them by the greater weight of the evidence that he acted in self-defense in order to be acquitted. This was not correct. The point is settled by State v. Minnis, 486 S.W.2d 280, 284–285 (Mo.1972), where the court said in considering a similar instruction: "Quite clearly, a defendant has no burden on the issue of self-defense. All that is required to raise the issue is that there be a prima facie showing, from evidence produced by either defendant or the state, of the elements of self-defense. When that issue is raised, the burden rests on the state to prove beyond a reasonable doubt that the killing was not done in self-defense . . . Such an instruction

[meaning one placing the burden of proof on defendant as to self-defense] is prejudicially erroneous because, in shifting the burden of proof, on this essential element of the state's case, it denies to defendant the full effect of the presumption of innocence. It subjects the defendant to conviction if he has not proved justification for the homicide—and therefore his innocence —even though his evidence may create a reasonable doubt of his guilt . . . .

" . . . Although it [the instruction] does not explicitly throw upon the defendant the burden of proving self-defense, that is the sense of it, and would be so understood by any reasonable juror since the finding is obviously for the benefit of the defendant who would be exonerated thereby . . . It is erroneous also, . . . because that first paragraph conflicts with the submissions in [referring to another instruction] [1] that the presumption of innocence accorded defendant is not overcome except ·by evidence establishing guilt from all the evidence beyond a reasonable doubt, which burden rests on the state. While a lawyer could, with some patience and difficulty, harmonize this ravel of contradictory directions, it is not to be expected of a jury of laymen."

The Minnis case also answers the state's reliance on State v. Holt, 434 S.W.2d 576 (Mo.1968), which was similarly relied upon by the state in the Minnis case. In our case, as in Minnis, the requirement that the jury must find "by the greater weight of the evidence, that the defendant acted in self-defense" has the effect of expanding the application of proof "by the greater weight of the evidence" to the defense of self-defense to which it is directly connected in the language of the instruction, which was not true of the instruction in Holt. As said in Minnis, l. c. 286 of 486 S.W.2d: " . . . An attentive and reasonable reading of the first paragraph . . . leads to the conclusion that the elements of self-defense are to be proved

beyond a reasonable doubt [by the greater weight of the evidence in our case] and that the burden for such proof was on the defendant who would benefit by that finding . . . .."

Judgment reversed and cause remanded.

All of the Judges concur.

---

1. There was a similar instruction, No. 6, on the presumption of innocence, in this case.