**STATE of Missouri, Respondent,**

v.

**Charles E. COOK, Appellant.**

**No. WD 36401.**

Missouri Court of Appeals,
Western District.

June 25, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

William E. Shull, Kearney, for appellant.

Kenneth J. Berra, Richmond, for respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

NUGENT, Judge.

Defendant Charles E. Cook was charged with two counts of armed criminal action, one count of assault in the first degree and one count of unlawful use of a weapon. The jury found the defendant guilty of assault in the third degree, a lesser included offense of assault in the first degree, and not guilty on all the other charges. The defendant was sentenced to six months in the county jail. He complains of the court's refusal to submit to the jury his defense of accident and of the court's instruction to the jury on self defense. We reverse and remand for a new trial with directions.

The events that give rise to this case occurred on October 29, 1983. The parties do not dispute that on the evening of that day Veronica and Preston Oglesby were heading south in their truck on Highway C in Ray County. Mrs. Oglesby was driving. The defendant, his wife, his daughter Patricia Patience, and his son-in-law David Patience were proceeding down Highway D in the Cook's pickup truck, the defendant driving. They pulled out from Highway D onto Highway C in front of the Oglesbys and headed south. Both cars ended up pulling off to the side of the road. How that came about is disputed by the parties. Mr. Cook and Mr. Oglesby got out of their vehicles. Mr. Cook had a pistol and Mr. Oglesby ended up being shot in the neck. The parties also dispute how the shooting came about.

The state's evidence of the events comes from the testimony of the Oglesbys. Mr. Oglesby testified that the defendant's vehicle pulled out in front of their truck on Highway C forcing his wife to apply the brakes to avoid a collision. The defendant then proceeded slowly down the highway. The Oglesbys pulled into the opposite lane and started to pass. Mr. Cook pulled out

into the lane forcing them onto the shoulder. The Oglesbys got back on the highway, passed the defendant and pulled off onto the shoulder. The defendant pulled off behind them. Mr. Oglesby explained that he asked his wife to pull off because he wanted to find out why the defendant had run them off the road. Angry, he got out of his truck and approached the Cooks' vehicle. Mr. Cook also got out of his truck, pointed a gun at his stomach and said, "I've got a gun, I'm going to kill you." The defendant then raised his weapon and shot him in the neck.

Mrs. Oglesby corroborated her husband's testimony up until the time he got out of the vehicle. She admitted that her husband was angry when he got out of the truck. She did not get out with her husband and did not see the shooting, but left the truck only when she heard her husband moaning. She heard the shot but thought that it was a rock hitting the truck. When she got out, she saw her husband holding his shoulder and Mr. Cook pointing the gun at her. She testified that Mr. Cook threatened to kill her, but her husband assured the defendant that they were leaving. Mr. Cook allowed them to get in their truck and drive off. They drove to Lawson, Missouri, and reported what had happened to the local police.

Mr. Cook and the members of his family told a different story. Mr. Cook testified that he was driving his pickup truck and pulled out onto highway C. He did not see the Oglesbys' truck when he pulled out, but he did see the lights approaching from the north. He drove down the highway and after going a short distance he saw an oppossum on the road and pulled over into the other lane to avoid the animal. As he was about to swerve, he saw the lights of the Oglesbys' truck. When he swerved to avoid the oppossum, the other truck dropped back. Mr. Cook then returned to his lane and the Oglesbys continued on in the opposite lane and pulled even with his truck. At that time, Mr. Oglesby hung out of the passenger window, made an obscene gesture and shouted something which the defendant could not hear. The Oglesbys then passed the defendant and pulled in front of him, forcing him to slow down. The Oglesbys then pulled off to the shoulder of the road as did the defendant. On the seat next to him the defendant was carrying a loaded .22 caliber Rueger pistol. He testified that it was in its holster when he pulled off onto the shoulder.

Mr. Cook further testified that after they stopped Mr. Oglesby got out of his truck and approached the Cooks' truck. He looked angry. Mr. Cook could not see Oglesby's right hand and was concerned that he had something in his hand. Mr. Cook yelled from his seat that he had a gun and that Mr. Oglesby should go back to his truck, but Mr. Oglesby ignored the warning. Picking up the holstered gun, the defendant then started to get out of his vehicle. Once again he warned the approaching man that he had a weapon, nevertheless, Mr. Oglesby came up to the defendant as he was getting out of his truck and hit him. At that time, the defendant was trying to remove his gun from its holster. Oglesby hit him again and the weapon discharged. Mr. Cook could not remember whether the gun was cocked or if he had his finger on the trigger when it fired, but he did remember that it was out of the holster when it discharged. After the shot, Mr. Oglesby clutched his neck, but Mr. Cook was not sure at the time whether Mr. Oglesby was hit. He then saw Mr. Oglesby's wife and told them to leave.

Mrs. Cook's testimony supported her husband's version. At the time she did not know why her husband pulled into the other lane because she did not see the oppossum. She also observed that Mr. Oglesby was angry when he got out of his truck, and she believed that he was going to harm her husband or their family. She testified that Mr. Oglesby hit her husband three times and that it was after the third blow that the gun fired. She did not see her husband point the gun at his attacker or threaten him, and she observed that the gun was in its holster when the defendant removed it from their truck.

Mrs. Patience also corroborated the defendant's testimony. She added that when Mr. Oglesby hit her father, the force of the blows threw him against the pickup and it was then that the gun fired. David Patience's version of the events agreed with the defendant's, although he added that he saw the gun pointed upwards right before it fired.

In rebuttal, the state presented the testimony of Deputy Sheriff Crouch who investigated the occurrence. He testified that he was a gun collector, that he was knowledgable about guns, that he had examined the defendant's firearm and was familar with that particular type of Rueger pistol. He testified that the defendant's gun was a single action pistol and that it could not be fired unless the hammer was fully cocked. On cross-examination he testified that if it received a sharp blow the gun could fire even though the hammer was not fully cocked. He also explained that the Rueger pistol has three positions to which it can be cocked. He further testified that the hammer should be cocked to the first position when it is loaded. This acts as a safety feature because the firing pin is in the chasis and with the hammer off the chasis the chance that it will accidentally fire is lessened.

The state has adopted defendant's statement of facts which relates that in his summation defense counsel demonstrated to the jury that the defendant's gun would fire in all three cocked positions by pulling the trigger.

At the close of the evidence, defendant requested that the court instruct the jury on the defense of accident or excuse and submitted a proposed instruction, a modification of MAI–CR 2.28. The court refused to do so but did instruct the jury on self defense using the state's instruction, a modification of MAI–CR 2.41.1. The jury found defendant guilty of third degree assault and not guilty on all the other charges.

Defendant Cook raises two points on appeal: First, that the court erred in refusing to submit to the jury his defense of excuse or accident. Second, that the instruction on self defense is an erroneous and prejudicial modification of MAI–CR 2.41.1 because a paragraph on the element of retreat was added to the approved instruction. We reverse and remand for new trial with directions.

## I. *Accident Defense*

■ Defendant's first point is dispositive of this case. The trial court refused to submit the defense of accident to the jury. Defendant argued to the trial judge that the evidence was sufficient to support the submission of the defense, and he stated that he would agree to the court's not instructing on self defense if it would instruct on accident. Mr. Cook argues here that the evidence was sufficient to support the submission and that the court erred in not so doing.

■ We agree that the court should have submitted the issue to the jury. Whenever upon the whole record any evidence of accident or excuse appears, however improbable, the court must submit the defense to the jury. *State v. Slaten,* 252 S.W.2d 330, 331 (Mo.1952); *State v. Dunbar,* 360 Mo. 788, 230 S.W.2d 845, 849 (1950).[1] In this case, at least some evidence tends to show that the shooting was accidental. Mr. Cook testified that he did not threaten to shoot Mr. Oglesby or point the gun at him, and that the gun fired when Mr. Oglesby struck the defendant. Therefore, defendant's evidence was that the shooting was unintentional and thus accidental. The members of defendant's family corroborated his testimony. They all testified that they did not see the defendant pull the gun out of the holster or point it at Mr. Oglesby or threaten him and that the gun fired when Mr. Oglesby hit Mr. Cook.

1. *State v. Slaten,* relies in part upon former § 559.050 which was repealed as of 1979 by the 1977 Criminal Code. But the law of excuse is part of the common law and it was unaffected by the repeal. MAI–CR 2.28, Notes on Use.

---

The issue of self defense was submitted to the jury. Defendant concedes that accident and self defense are inconsistent defenses, but he was willing to have only accident submitted to the jury. Since the evidence was sufficient to support the accident submission, the court erred in not granting defendant's request.

The evidence in this case supported the submission of both defenses. Where, aside from the defendant's testimony, independent evidence exists of both self defense and of accident, then both defenses should be submitted to the trier of fact. *State v. Randolph,* 496 S.W.2d 257, 262 (Mo.1973) (en banc); *State v. Peal,* 463 S.W.2d 840, 842 (Mo.1971). Ordinarily, the two defenses are inconsistent because the defendant who asserts self defense means and his evidence will tend to show that he intentionally fired his gun or struck his blow to defend himself. Thus, his conduct or the discharge of the gun was not an accident. But that does not preclude the premature, accidental and unintentional firing of a gun in such a confrontation before the need arose to make the final decision to pull the trigger in self defense. That would be an accident in the course of self defense.

Here the defendant's testimony supported an accident and a self defense submission. His testimony was corroborated by the testimony of the members of his family, and their testimony was at least some independent evidence that the shooting was accidental. Therefore, the court erred in not instructing the jury on both defenses.

The state argues that the court properly refused to submit the issue because defendant was acting illegally by exhibiting his weapon in an angry or threatening manner. The state relies principally upon *State v. Tatum,* 653 S.W.2d 241 (Mo.App. 1983), where the court held that the defendant was not entitled to an accident instruction because when his gun fired he was exhibiting his weapon in an angry or threatening manner in violation of § 571.-030.1(4).

*Tatum* is inapposite because there the evidence that defendant illegally exhibited his gun came from his own testimony and was undisputed. *Id.* at 243. In all of the cases the state relies upon the evidence was undisputed or the defendant's own testimony showed that he was acting unlawfully when the alleged accidental homicide or assault occurred. *State v. Hunter,* 560 S.W.2d 48, 51 (Mo.App.1977); *State v. Milentz,* 547 S.W.2d 164, 169 (Mo.App.1977); *State v. Merritt,* 540 S.W.2d 183, 184 (Mo. App.1976). Here, the evidence was contradictory as to whether Mr. Cook was acting unlawfully when the shooting occurred. Mr. Oglesby testified that the defendant pointed his pistol at him and threatened to kill him. Mr. Cook testified that he only told the victim he had a gun to dissuade him from advancing on the defendant and that he did not point his gun at Mr. Oglesby or threaten to kill him. His testimony was corroborated by his wife, daughter and son-in-law. That was certainly some evidence that defendant was not unlawfully exhibiting his weapon when the shooting occurred, and the jury found the defendant not guilty of unlawful use of a weapon.

The facts here are analogous to the facts in *State v. Ameen,* 463 S.W.2d 843 (Mo. 1971). The defendant in that case testified that he picked up his gun when a group of people advanced upon him in a threatening manner. The deceased and a third person grabbed the gun and it went off in the struggle. The Supreme Court held that the trial court erred in not instructing the jury on excuse. *Id.* at 845. Also similar is *State v. Crowley,* 345 Mo. 1177, 139 S.W.2d 473 (1940), where the Supreme Court held that the jury should have been instructed on accident when defendant's evidence was that he drew his weapon in self defense and that it fired when he was struck in the front and back by a group of attackers. *Id.* at 476.[2] The defendant's evidence here

---

2. *State v. Crowley,* relies upon § 3681 (1929) which is an earlier version of the repealed § 559.050, but, as we have explained in footnote 1, *supra,* the defense of accident is part of the

was that he did not point his gun at his assailant and that he was trying to get it out of his holster in self defense when it discharged.

## II. *Self Defense*

Since defendant's first point is dispositive, we need not address his second point, but the issue is likely to recur upon retrial and we discuss it simply to provide direction to the court below.

Defendant argues that the court erred in instructing the jury on self defense using the state's modification of MAI–CR 2.41.1. The state added the following additional element to the approved instruction: "In order to acquit the defendant by reason of self defense, you must find an attempt by the defendant to do all within his power consistent with his personal safety to avoid the danger and the need to take life." In his brief the defendant only sets forth the challenged portion of the instruction and not the entire instruction as required by Rule 30.06(e), but the full instruction is included in the record.

■ The state correctly argues that an element of self defense is that the one claiming the defense "did all within his power consistent with personal safety to avoid the danger and the taking of human life." *State v. Chambers*, 671 S.W.2d 781, 783 (Mo.1984) (en banc); *State v. Christie*, 604 S.W.2d 806, 808 (Mo.App.1980) (where this court held that the above element is also an element of self defense in ·an assault case.)

■ Although the above rule has been part of the Missouri law since 1906, MAI–CR2d 2.41.1 does not contain an instruction on this element. *State v. Fraga*, 199 Mo. 127, 97 S.W. 898, 900 (1906). The recent decision of *State v. Chambers, supra,* reaffirmed that rule. Nevertheless, when MAI–CR 2.41.1 was promulgated in 1979, over seventy years after the *Fraga* decision, the Supreme Court did not choose to include the challenged segment in the approved instruction. The Supreme Court has admonished the courts that, to promote

common law and unaffected by the repeal of

a system of patterned instructions, the approved instructions must be followed. "To invite one unapproved 'improvement' invites more unapproved, nonuniform 'improvements.' Ultimately, the result would be no patterned instructions. Patterned instructions serve to clarify the law as succinctly and clearly as possible. To invite additions, in areas covered by MAI civil or criminal, is to invite confusion." *State v. Phillips*, 583 S.W.2d 526, 530 (Mo.1979) (en banc). Neither this court nor the trial court has the duty or the right to improve MAI–CR where, as here, an applicable instruction is available in the approved instructions adopted by the Supreme Court.

For the foregoing reasons, we remand the case for a new trial in accordance with this opinion.

All concur.

§ 559.050. MAI–CR 2.28, Notes on Use.