**STATE of Missouri, Respondent,**

v.

**Judith Mae GOFORTH, Appellant.**

**No. 50790.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 9, 1986.

Shaw, Howlett & Schwartz, James Ochs, Clayton, for appellant.

William L. Webster, Atty. Gen., Paul LaRose, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant Judy Goforth appeals her conviction and sentence for involuntary manslaughter under § 565.024 RSMo Supp. 1984. Defendant was charged with second degree murder of her husband under § 565.021 RSMo 1978. The jury determined and the court sentenced defendant to serve a term of seven years imprisonment. We reverse and remand for new trial.

Defendant shot and killed her husband in the kitchen of their home. The cause of death was multiple gunshot wounds. The fatal shot struck the heart. The defense was justification, self-defense and defense of the defendant's son.

The errors claimed on appeal relate to: (1) the admission of certain photographs on grounds that they were irrelevant, repetitious, inflammatory and prejudicial; (2) evidence of the victim's reputation for violence was improperly limited or excluded; (3) refusal to give that part of defendant's offered instructions on self-defense and defense of another which would have submitted the issue of the victim's reputation for rash, violent or turbulent disposition and defendant's knowledge of that reputation in deciding whether defendant reasonably believed she or her son were in danger of death or serious physical injury; and, (4) failure to declare a mistrial when per misadventure a duplicate set of instructions

were mixed in with State's Exhibits and furnished to the jury.

The State's first witness, a neighbor and registered nurse, testified that she received a phone call about 7:00 p.m. on January 5, 1985, asking her aid. The neighbor went to the Goforth's home and saw Ross Goforth on the kitchen floor. She examined him and found him dead. Also present were defendant and Jeff Civey, defendant's 15 year old son from an earlier marriage. The neighbor recalled defendant asking, "Can God forgive me for this?" The emergency medical team arrived. The neighbor went to the living room and sat beside defendant. She noticed no marks, bruises, cuts or scratches on defendant. While seated there, defendant said to her, "He would have killed us this time, Marilyn."

The sheriff arrived at the Goforth home about 7:40 p.m. He saw Ross Goforth's body and observed bullet wounds on Ross's arms and chest. The sheriff seized the weapon, a .22 caliber semi-automatic rifle found on the living room floor containing ten empty shells and ten live rounds. He also found various bullet fragments.

Defendant Judy Goforth testified she had prepared dinner and called her husband and son to the table. Everyone filled their plates. Ross became angry with Jeff because he had failed to do a chore and reached across the table to slap Jeff. Defendant asked Ross to stop, rising as she did so. Ross slapped defendant and she stumbled, knocking over a chair. Defendant headed towards the bedroom and Ross followed her. All the way there, Ross continued to shove and push her while cursing her. Jeff remained in the kitchen. Ross grabbed defendant's arm, then dropped it and headed back to the kitchen. She followed him. There he threatened Jeff, cursing him and calling him names. Defendant testified that Ross threatened to kill Jeff. She ran back to the bedroom for her shoes, saw the gun and said she thought that she could scare Ross with the gun so that he would let them leave the house. There were other guns in the house, but she grabbed the first one she saw. Defendant did not know what type of gun she had used. She headed back towards the kitchen but stopped at some intermediate point in the hall. Ross was in the kitchen threatening Jeff. She called to Ross to stop. He turned towards her, "mad and wild." She did not recall shooting him, but next remembered seeing Ross lying on the floor with the gun at her feet.

Defendant also testified that Ross had slapped her within three months after their wedding on September 1, 1979. Ross hit her often during their marriage from which she sustained black eyes and bruises. He hit her only when he had been drinking and he had been drinking whiskey on the day he was shot. The parties stipulated the deceased was found to have a .07 blood alcohol content.

Jeff Civey then testified as to the same events. His version agreed with that of his mother. Jeff stated that Ross had beaten him and his mother. He was badly beaten on these occasions. He also recounted that defendant held the rifle at her hip and fired. Ross grabbed his arms and fell to the floor.

The defense called fourteen witnesses who testified that defendant's reputation in the community was peaceful. Of these, seven had seen some bruises or marks on defendant or Jeff Civey at one time or another. Other witnesses, testifying for the State on rebuttal, denied seeing such marks. No witness had seen Ross strike defendant, although one testified to seeing him jerk her arm.

■ We find the decisive issue on this appeal is defendant's claim that the court erred in refusing to submit that portion of her instructions on justification, self-defense and defense of another, as follows:

> If Joseph Ross Goforth had a reputation for a rash, violent or turbulent disposition or character, (ordinarily or when under the influence of liquor), and if the defendant knew of that reputation you may consider such reputation and defendant's knowledge thereof in deciding whether defendant reasonably believed

she was in danger of being attacked by Joseph Ross Goforth and in danger of death or serious physical injury at the hands of Joseph Ross Goforth. MAI–CR 2d 2.41.[4]

The instruction on justification in defense of another contained a similar provision in reference to defendant's reasonable belief of danger to her son. MAI–CR 2d 2.41.1 applies to justifiable use of force in self-defense and MAI–CR 2d 2.41.2 applies to justifiable use of force in defense of third persons. Paragraph 4 of MAI–CR 2.41.1 and .2 suggests the use of the omitted paragraph. The inclusion or omission of material in the paragraph depends upon the evidence in each case.

We review this issue as preserved error. The instructions were offered containing this paragraph but refused. The claim of error was preserved in paragraphs 18 and 19 of the motion for new trial. The State contends that the motion for new trial fails to allege facts in evidence that justified the instruction. Facts and not mere conclusions are required. *State v. Sanders*, 541 S.W.2d 530, 532 (Mo. banc 1976). In the present case the motion for new trial alleged that the, "[s]aid omission is in conjunction with earlier rulings disallowing evidence of Ross Goforth's reputation. However, evidence was still illicited supporting Ross Goforth's reputation for violence when under the influence of alcohol." We find this adequate under Rule 29.11(d) and the requirements of *Sanders*. The claim of error stated facts alleged to be in evidence justifying submission. Defendant did more than merely allege that the omitted portion of MAI–CR 2d 2.41.1 and .2 were supported by evidence.

In determining whether the court erred in failing to give certain instructions requested by defendant, the evidence must be considered in the light most favorable to defendant to determine whether there was any competent substantial evidence on the matters covered by the requested instruction. *State v. Cole*, 377 S.W.2d 306, 307 (Mo.1964). Here we review the evidence most favorable to defendant's hypothesis

of self-defense. *State v. Thomas*, 625 S.W.2d 115, 122 (Mo.1981).

The only disputed issue in this case was the question of self-defense or defense of another. Under the facts we consider these as one defense because what one may do for himself he may do for another. *State v. Grier*, 609 S.W.2d 201, 203 (Mo. App.1980). The four recognized elements of self-defense are set forth in *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App. 1975). A person may use deadly force when and to the extent he reasonably believes such to be necessary to defend himself or a third person under circumstances described in § 563.031 RSMo 1978. The defendant has the burden of injecting the issue of justification under that section. Section 563.031.4 RSMo 1978. The state carries the burden of proof beyond a reasonable doubt in opposing a claim of self-defense once the issue is injected in the case. *State v. Ford*, 491 S.W.2d 540, 542 (Mo.1973). "Quite clearly, a defendant has no burden on the issue of self-defense. All that is required to raise the issue is that there be a prima facie showing, from evidence produced by either defendant or the state, of the elements of self-defense. When that issue is raised, the burden rests on the state to prove beyond a reasonable doubt that the killing was not done in self-defense." *Id.*

> An accused can meet his 'burden of injecting the issue' of self-defense under the statute if evidence thereof is introduced *from whatever source* and an accused is not deprived of such defense upon his failure to introduce direct evidence by way of evidence for the defense .. there must be evidence introduced, *from whatever source*, to support the issue ... If there is evidence to support the issue, the burden rests upon the prosecution to prove beyond a reasonable doubt that the homicide was not justified. An accused bears no burden of proof on the issue of self-defense but merely bears the burden of 'injecting' the issue into the case from whatever evidentiary source. (our emphasis)

*State v. Fincher,* 655 S.W.2d 54, 58 (Mo. App.1983).

In the context of these recognized principles the evidence on the issue of self-defense and defense of another supported submission of the omitted portion of MAI–CR 2d 2.41.1 and .2. This paragraph was directed at the reputation of the deceased for violence, knowledge by the defendant of that reputation and defendant's reasonable belief of danger to herself or her son involving death or serious physical injury. Marilyn Miller, the next door neighbor and a witness for the State, testified on direct examination that defendant told her, "He would have killed us this time, Marilyn". The inference is that there were prior occasions. Because of the court's pre-trial ruling on State's motion in limine, defense counsel was prohibited from any questions to this witness, or any state's witnesses, about the deceased's reputation for rash, violent or turbulent disposition of character either generally or within the home.

The defendant testified that her husband had been drinking heavily the day of the shooting. The decedent was the original aggressor in slapping defendant. He pursued her from the kitchen toward the bedroom shoving and pushing and cursing her. The decedent thereafter threatened to kill her son. Particularly the decedent said, "I'm going to kill you" while the boy was backing away. The decedent was positioned so as to prevent the boy from exiting through a door. When the defendant requested her husband to stop his actions he started "toward me and he was mad and he was wild". The defendant and the decedent were married for five years. During the marriage he had slapped her frequently causing marks, black eyes and bruises around her face. The parties were separated for a time because the decedent ran defendant and her son from the home. The beatings were associated with his drinking. He never attacked or struck defendant when not drinking. He had on occasion kicked and threatened her son. Defendant was not aware of anyone else who had observed the beatings. On one occasion he knocked the defendant off a step causing a back injury requiring medical attention. On the occasion of the shooting the decedent was acting wild and the defendant was fearful for her life. The state developed on cross-examination that the defendant had filed suit for divorce and requested a restraining order against the decedent for beating and hitting her. She testified that certain named individuals had seen her bruises and marks.

Jeff Civey, defendant's son, testified that he saw the decedent drinking whiskey during the day. Just before the shooting he attempted to stay away from the decedent by keeping the kitchen table between them. The decedent tried to kick him. The deceased appeared to be very angry and started toward the defendant with clinched fists. On more than three occasions the deceased had beaten him with fists. On prior occasions he had threatened to kill. Jeff had seen and heard the deceased threaten his mother and beat her badly.

There was no evidence of the deceased's reputation generally in the community for rash, violent or turbulent disposition or character. Under defendant's evidence he was rash, violent and turbulent only within the household and then only when drinking. The evidence of the defendant and her son established, for purposes of justifying or requiring the instruction paragraph omitted by the trial court, that the decedent's violent acts against herself and her son were known to them. The general rule recognized in Missouri is that the reputation or character of the person killed for turbulence and violence cannot be established by proof of specific acts of violence on his part against persons *other than the defendant. State v. Hicks,* 438 S.W.2d 215, 219 (Mo.1969). (our emphasis) A corollary of this rule is that specific acts of violence committed by the person killed against the defendant may be considered a basis of reputation and may be considered by the jury in determining defendant's knowledge and in deciding whether defendant reasonably believed she was in danger of death or serious physical injury.

MAI–CR 2d 2.41.1 suggests an instruction which lists the elements of self-defense in paragraph number 2. In the present case paragraph 2 of the self-defense instruction as submitted provides:

2. If the defendant was not the initial aggressor in the encounter with Joseph Ross Goforth and if the defendant reasonably believed it was necessary to use deadly force to protect herself against what she reasonably believed to be the eminent use of unlawful force putting herself in an eminent danger of death or serious physical injury at the hands of Joseph Ross Goforth, then the defendant acted in lawful self-defense and must be acquitted.

The paragraph summarizes the law of self-defense. MAI–CR 2.41 then suggests paragraphs which separately address each element. Paragraph 3 of the pattern instruction, as offered and submitted, included the paragraph that if Joseph Goforth prior to the encounter made threats which were known by defendant, the jury may consider the threats in explaining conduct or apprehension of the defendant and for the purpose of determining who was the aggressor. Paragraph 4 is the omitted portion and deals with reputation, knowledge and reasonable belief. Paragraph 5 of the pattern MAI–CR was submitted and authorized the jury to consider prior assaults and specific acts of violence of Joseph Ross Goforth against the defendant, but the consideration was limited to explaining defendant's conduct or apprehension and determining who was the aggressor. Neither of the submitted paragraphs, 3 and 5, required the jury to consider the defendant's knowledge of the prior specific violent acts against herself or her son in determining what the defendant reasonably believed. The instruction on reasonable belief was a critical part of the paragraph offered but refused. Apparently the trial court and the state considered reputation in the omitted paragraph to relate only to general reputation in the community. That would usually apply where the person killed and the defendant were strangers and the theory of the defense was that the defendant

was aware of the general reputation when assaulted by the stranger. The facts in this case are that "reputation" was the specific characteristics of the decedent, as husband, exhibited within the home and only when intoxicated. The testimony of the defendant and her son established knowledge of defendant of his violent disposition under the prevailing circumstances. This was the defense on which the defendant relied. By refusing the instruction the jury was not given the opportunity to determine how defendant formed her belief and whether it was reasonable. Her belief was not based upon an unavailable general reputation but on a known pattern of beatings and threats against life which occurred only within the home and only when or after decedent was drinking. According to the evidence, which we must consider in the best light for defendant, the deceased had a reputation based upon prior assault on defendant and her son for rash, violent or turbulent disposition or character. His general reputation in the community was not involved. Even if his reputation in the community had been that of a calm, quiet and peaceful citizen, the defendant would have been entitled to a self-defense instruction based upon his domestic violent conduct and threats addressed to the defendant and her son as that conduct relates to defendant's reasonable belief of eminent danger of death or serious physical injury. The defendant was entitled to the submission of that issue and tendered an instruction requesting submission.

■ Defendant also contends that the court erred in sustaining an oral motion in limine to prevent defendant from inquiry into reputation of the deceased in the state's case. In support of the motion the attorney for the state said, "But I think [the defendant] has to establish first *from her own testimony* that she knew that reputation.... I'm asking the court to limit, during my direct case, reputation of the deceased *until the defendant testifies* that she knew of the reputation of the deceased, what that reputation was, that she knew of acts. Then that opens up the

issue of reputation .. I'm just saying during my case in chief, Judge. I'm not saying—he can put his defendant on and she can say 'I knew the reputation', then he can call Mrs. Miller back to the stand and say reputation. I just don't want that during my case in chief. He can't raise that issue until she gets on the stand and *testifies to it.*" (our emphasis) Counsel for the defendant pointed out to the court that if the motion were sustained it would force the defendant to testify in order to have or rely on self-defense. The court said, "Well, I don't think his reputation is an issue until the defendant makes it an issue. And I think it's only relevant and an issue if she has knowledge of it. Otherwise, it's not relevant at all. I think you're going to have to make that initial statement, basically, *in your case* before it can become an issue." (our emphasis) This ruling was error.

The defendant was entitled to inject the issue of self-defense from evidence from whatever source, even during the state's case in chief. It does not matter which side actually produces the evidence or from whose witnesses it comes. *State v. Fincher*, 655 S.W.2d 54, 58 (Mo.App.1983). The introduction of the evidence is a separate question from submissibility. The trial court was correct in observing that the issue could not be submitted unless there was evidence that the defendant had knowledge of the reputation of the deceased but the court was wrong in concluding and ruling that reputation evidence could not be a subject of inquiry in the state's case in chief. There was no question that self-defense was the theory on which the defendant would try the case. The state's oral motion in limine therefore did not relate to some issue which would be collateral or prejudicial and should, on that account, be excluded by a pre-trial order. Where self-defense is an issue on a charge of murder a motion in limine is unnecessary because the evidence can be considered by evidentiary objections during trial. The questions would not, in themselves, inject an improper issue in the trial. Further, if the motion was well taken it

would prevent a defendant from similar inquiry of a prosecuting victim-witness in an assault case. The point is no different in a murder case.

This error is related to defendant's first claim of error, the question of whether there was evidence to support defendant's self-defense instructions as offered. It is possible that there was evidence known to witnesses for the State but not known to the defendant or witnesses called by the defendant of violent reputation of the deceased. Because of the court's order, counsel for the defendant was prohibited from asking the State's first witness, Marilyn Miller, about her knowledge of the reputation of Ross Goforth for violence, either generally or directed at defendant or her son. She was a next door neighbor. In direct examination she recalled a statement of the defendant, "He would have killed us this time, Marilyn." As a next door neighbor, Marilyn Miller may have had information of the meaning of "this time" which would have been evidence of specific prior violent acts of the deceased upon the defendant or her son. There is no support for requiring the defendant to first testify and raise the issue of self-defense before permitting cross-examination of state's witnesses on the issue of violent acts or threats of the decedent in relation to defendant. If the law were otherwise then the defense of self-defense would not be available to any defendant who does not testify. This would tend to shift the burden of proof on self-defense to the defendant contrary to *State v. Fincher*, 655 S.W.2d at 58. Moreover it would protect the State from testimony of its own witnesses in its case in chief which may tend to support the defense. On re-trial the defendant should be permitted, subject to recognized evidentiary objections, to inject the issue of self-defense at any stage of the proceedings.

We find no trial court error in admitting exhibits 21, 24 and 25. Even if the exhibits are gruesome they depict the events at the scene and there was no abuse of discretion

in their admission into evidence. *State v. Davis*, 653 S.W.2d 167, 175 (Mo. banc 1983).

It is unnecessary for us to address the mechanical error of furnishing the jury with a duplicate set of instructions. This will not occur on retrial.

PUDLOWSKI, P.J., and CRANDALL, J., concur.