**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Johnnie Dewayne MILLER,
Defendant–Appellant.**

**No. 15744.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 4, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 26, 1989.

Application to Transfer Denied Aug. 1,
1989.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Ronald D. White, Robinson, Turley, Turley & White, Rolla, Joseph W. Rigler, J. Max Price, Salem, for defendant-appellant.

PREWITT, Judge.

Defendant was charged with murder in the second degree and following jury trial convicted of involuntary manslaughter. He was sentenced to five years' imprisonment. Defendant appeals, presenting four points relied on.

■ For his first point defendant contends that the trial court erred in submitting involuntary manslaughter to the jury. Defendant argues in his brief that he was either guilty of murder in the second degree "or guilty of nothing at all" because there "were no facts to support submission of Involuntary Manslaughter as a lesser included offense".

Relevant here, involuntary manslaughter is committed if a person recklessly causes the death of another. § 565.024.1(1), RSMo Supp.1984. Such involuntary manslaughter can be a lesser included offense of first and second degree murder, § 565.025, RSMo Supp.1984.

The trial court should only instruct the jury on manslaughter as a lesser included offense if there is an evidentiary basis for convicting the defendant on that charge. *State v. Anding*, 752 S.W.2d 59, 62 (Mo. banc 1988). See also *State v. Martin*, 602 S.W.2d 772 (Mo.App.1980).

The question before us under this point then is whether the evidence supported the jury finding that defendant was guilty of recklessness in causing the death. To determine if the evidence was sufficient to support the conviction, we view the evidence and proper inferences therefrom in the light most favorable to the state. *State v. Cook*, 711 S.W.2d 208, 210 (Mo. App.1986); *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App.1979).

Under the applicable instruction a person "acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances". MAI–CR3d 313.10.

The incident occurred in the late evening hours of October 26, 1985, at the Grant's Inn Tavern in Ironton. That evening defendant, accompanied by a female named Sandy Risher, had gone to the tavern and a discussion or quarrel had ensued between defendant and Brad Inman. Risher had previously lived with Inman. Risher and defendant left the tavern, but returned later. After they returned, Risher went outside the tavern to get cigarettes from the vehicle she and defendant were traveling in. Inman followed her as far as the lobby. Defendant followed Inman, then went on outside to the vehicle. When he saw Inman coming out of the tavern, defendant reached into the back of his vehicle to get a rifle. After he had it in front of him, the rifle discharged, causing the death of a patron in the bar. The evidence was in conflict as to what caused the rifle to fire.

Inman says that defendant pointed the rifle at him and fired it, but the bullet missed him. Defendant and Risher testified that just before the rifle fired, Inman was verbally threatening Risher and defendant and making threatening gestures toward them. Their testimony was that defendant was holding the weapon at his waist when Risher grabbed the rifle and it discharged. Defendant said he did not fire the weapon, but that it went off accidentally when Risher grabbed it. Defendant said that he did not get the rifle to shoot Inman, but to keep Inman away from him. He said there was a safety on the rifle that is put on or off with the same finger that you use to pull the trigger. Defendant stated that when he pulled the rifle out of the car he did not know if the safety was on or off, but that he knew the weapon was loaded.

There was evidence that there were as many as 25 people in the tavern and that the gun had been pointed toward the front door of it just before it was fired. The jury could have determined that defendant did not intentionally fire the weapon at Inman, but was reckless in holding a gun pointed toward the front door with the safety off when he could have anticipated that it might fire for some reason, including that someone might try to disarm him. The jurors could find that by handling the weapon and having it pointed toward the

tavern when the safety was in such a position that it could be fired, the defendant was acting recklessly. The evidence was sufficient to support the submission and conviction. Point one is denied.

For his second point defendant contends that the trial court erred in not submitting an instruction on self-defense which he requested and tendered. As defendant concedes, whether self-defense should have been submitted as a defense to murder in the second degree is now moot because defendant was acquitted of that charge. The question is whether it should have been submitted as a defense to involuntary manslaughter.

■ The issues which defendant raised in his defense included self-defense and accident. These issues are inconsistent. Self-defense in a homicide matter involves a claim that a life was taken by an intentional act necessary because of apprehension of great bodily harm while accidental homicide involves an unintentional taking of a human life. *State v. Hafeli*, 715 S.W.2d 524, 529 (Mo.App.1986); *State v. Sivils*, 589 S.W.2d 617, 619 (Mo.App.1979). See also *State v. Merritt*, 734 S.W.2d 926, 930 (Mo.App.1987) (in homicides self-defense implies that a defendant acted intentionally for his own protection or that of others). But see *State v. Branch*, 757 S.W.2d 595, 599 (Mo.App.1988) (self-defense and accident no longer mutually exclusive under MAI–CR3d 304.11 D).

Among the cases cited by defendant are *State v. Goforth*, 721 S.W.2d 756 (Mo.App. 1986), and *State v. Cook*, 696 S.W.2d 814 (Mo.App.1985). Neither is applicable here. *Goforth* did not involve evidence that the gun was fired accidentally or because of interference by a third person. There a semi-automatic rifle fired ten shots. 721 S.W.2d at 757. *Cook* did not involve manslaughter but assault. As self-defense was submitted to the jury there, whether a self-defense instruction should have been given was not an issue. There was also no issue

in *Cook* as to whether the defendant was reckless in his handling of the weapon.

■ Self-defense might justify producing the weapon to prevent being attacked by Inman, but would not justify the reckless handling of it. Defendant was not entitled to the instruction on self-defense. Compare *State v. Sivils*, supra 589 S.W.2d at 619. See also *People v. Tanthorey*, 404 Ill. 520, 89 N.E.2d 403, 408 (1949) (self-defense instruction properly refused where defendant testified that shooting was accidental and he did not intend to fire the weapon); *People v. Purrazzo*, 95 Ill.App.3d 886, 51 Ill.Dec. 47, 53, 420 N.E.2d 461, 467 (1981), cert. denied 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982) (self-defense relates to the intentional use of force; if gun is accidentally discharged, self-defense is out of the case); *State v. Kerr*, 14 Wash. App. 584, 544 P.2d 38, 40 (1975) (justifiable homicide instruction not authorized where defendant insists that he did not intend to shoot). It was also highly questionable whether self-defense was available to the charged crime on the facts which defendant presented. This point is denied.

For his third point defendant contends that the trial court erred in refusing the third-party defense instruction which he tendered. He tendered MAI–CR3d 306.08 premised on the theory that he acted in lawful defense of Sandra Risher. He states that because it is similar to self-defense, his argument on self-defense discussed in the previous point is applicable here. For the reasons given in denying Point II, Point III is also denied.

■ Defendant's remaining point is that the trial court erred in refusing to submit to the jury an excusable homicide instruction he tendered drafted from MAI–CR2d 2.28.[1] Defendant acknowledges that the accident instruction was withdrawn in MAI–CR3d and relies on a portion of MAI–CR3d 304.11(D) which states:

"However, if, under unique circumstances, there is evidence of excuse not negated by the required findings of the

---

1. Defendant refers to this as an "accident" instruction using "accident" as excluding criminal fault. See § 563.070, RSMo Supp.1984; Black's Law Dictionary 30–31 (4th ed. 1968). We also use "accident" in that sense.

pattern instructions for the offenses set forth in Chapter 565, the verdict directing instruction may be appropriately modified and an instruction submitting excuse prepared."

*State v. Bates,* 751 S.W.2d 758 (Mo. banc 1988) held that the trial court properly refused an accident instruction based on MAI–CR2d 2.28 because that instruction was withdrawn from MAI. Defense of accident was presented in the evidence and argument. The defendant there testified that the shooting occurred during a "tussle" between himself and the victim. 751 S.W.2d at 759. The court held that the issue of accident was properly framed by the instructions which required a purposeful act so that the defendant was entitled to present his accident claim by evidence and argument and a specific instruction was not necessary. Id.

Following *Bates* we conclude that there was no error in refusing the instruction here. Defendant was entitled to and did offer evidence which he contended showed that the shooting was due to accident and not by any intentional act or recklessness on his part. If he was reckless as the jury must have found, then the shooting could not have been caused by accident. Therefore, the jury had to reject at least defendant's view of what the evidence showed and concluded that the cause of the death was not accident but recklessness of the defendant. This point is denied.

The judgment is affirmed.

FLANIGAN, P.J., concurs.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I respectfully dissent. The defendant testified that in getting and presenting the gun he was acting in self-defense against an attack by Inman. There was evidence from which the jury could find that to be true. If he was so acting, the criminal responsibility of the defendant for the death of the bystander has been appropriately summarized.

If, then, the perpetrator of the homicide or of the assault had no criminal intent in attempting to injure or kill another person, as where the perpetrator was lawfully defending himself from the harm sought to be inflicted upon him by such other person, the fact that, on that occasion, a third person was unintentionally injured or killed by the perpetrator would not make him liable, unless the perpetrator acted carelessly or without regard to the safety of innocent bystanders.

Annot., Self-defense—Unintended Injury or Death, 55 A.L.R.3d 620, 622–623 (1974) (footnotes omitted). Also see *State v. Foster,* 355 Mo. 577, 197 S.W.2d 313 (1946); LeFave & Scott, Substantive Law § 57(g) (1986).

When the defendant got the gun and held it in front of him, he was acting intentionally, even though he knew the gun was loaded and did not know if it was on safety. These are defendant's acts from which the jury would have to determine whether or not he acted recklessly. In determining whether or not the defendant was entitled to an instruction on self-defense, the evidence must be viewed favorably to this hypothesis. *State v. Ehlers,* 685 S.W.2d 942 (Mo.App.1985). The defendant was entitled to have the jury consider whether or not those acts were justified.

"[I]t was the duty of the court to give a correct instruction upon the subject even though the instruction offered by the defendant was erroneous." *State v. Bounds,* 305 S.W.2d 487, 491 (Mo.1957). MAI–CR2d 13.10 Manslaughter: Involuntary: Recklessly included paragraph Third submitting self-defense. Notes on Use 4 to that instruction in part provided: "When there is evidence to support the justifiable use of force, then paragraph (Third) must be given. In addition, the Court must give a separate instruction directing a verdict on justification." MAI–CR 2d 13.10, Notes on Use 4 (1984 New).

Paragraphs such as paragraph Third have been eliminated from the verdict directing instructions in MAI–CR 3d. However, the requirement of such a paragraph

when supported by the evidence in verdict directing instructions and a self-defense instruction is contained in Notes on Use 2 to MAI–CR 3d 306.06.

The pattern instruction MAI–CR 3d 306.-06 must be modified to submit the acts of the defendant being in self-defense against Inman. For the purpose of this dissent, it is not necessary to consider if that instruction need be modified to appropriately submit the accidental use of deadly force. Because of the failure of the trial court to give a self-defense instruction, I would reverse the judgment and remand the case.

**J.P., Petitioner–Appellant–Respondent,**