**STATE of Missouri, Respondent,**

v.

**Gary MILLER, Appellant.**

**No. WD 51796.**

Missouri Court of Appeals,
Western District.

Oct. 13, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 24, 1998.

Application for Transfer Denied
Jan. 19, 1999.

Richard L. Beaver, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, C.J., SMART, J., and TURNAGE, Senior Judge.

ULRICH, Chief Judge.

Gary Miller appeals his convictions following jury trial for involuntary manslaughter, section 565.024.1, RSMo 1994, and armed criminal action, section 571.015.1, RSMo 1994, and consecutive sentences of 20 and 10 years imprisonment, respectively. Mr. Miller raises several points on his direct appeal. He claims that the trial court erred in (1) allowing the State to amend the information to charge him as a prior and persistent offender; (2) sentencing him as a prior and persistent offender; (3) submitting the instruction on involuntary manslaughter; (4) refusing to submit an instruction on self-defense in connection with the involuntary manslaughter instruction; and (5) excluding laboratory reports showing the victim's blood alcohol content. Mr. Miller also appeals from the denial following an evidentiary hearing of his Rule 29.15 motion for post-conviction relief. He contends that his trial counsel was ineffective in failing to lay the proper foundation for introduction of laboratory reports showing the victim's blood alcohol content and in failing to call certain potential defense witnesses to testify. Mr. Miller also contends that he was denied his constitutional rights to be present at all critical stages of the trial and to a fair and impartial jury because he was absent from the courtroom at the time his trial attorney made his strikes for cause and his peremptory challenges. The judgment of convictions is affirmed, and the denial of his Rule 29.15 motion is affirmed.

## FACTS

The appellant, Gary Miller, became acquainted with Kim Wood in January 1995 while Mrs. Wood was estranged from her husband, Mike Wood. Mrs. Wood did not have a car, and Mr. Miller began to provide her rides to and from work.

On the afternoon of January 27, 1995, Mrs. Wood telephoned Mr. Wood's mother and left a message that he could pick up his children at her grandmother's house where the children were staying while she was at work. Mr. Wood and two friends, Chris Bailey and the victim, Wayne Matson, drove to Mrs. Wood's grandmother's house arriving at approximately 6:30 p.m. and parked in a church parking lot located across the street.

In the meantime, Mr. Miller picked Mrs. Wood up from work in his pickup truck at approximately 6:10 p.m. The two drove to K–Mart to purchase some diapers and then drove to Mrs. Wood's grandmother's house. They arrived at the house at approximately 7:00 p.m. and parked on the street immediately in front of the house. Mrs. Wood exited the truck and went into the house while Mr. Miller remained in the truck.

As Mrs. Wood walked into the house, Mr. Wood parked his car behind Mr. Miller's truck. Mr. Wood and Mr. Matson, the victim, then exited the car and walked toward the house. Mr. Bailey remained in the car. As the two men passed the truck, Mr. Miller apparently said something to them because they turned around and walked back toward the truck. When Mrs. Wood saw the men approaching Mr. Miller's truck, she ran outside and positioned herself between Mr. Wood and the truck. Mr. and Mrs. Wood began to argue, and Mrs. Wood hit Mr. Wood in the chest. Mr. Wood reached around Mrs. Wood to get at Mr. Miller, and the sleeve of his jacket caught the window of the truck breaking it. Mr. Bailey, who had exited the car after Mrs. Wood came back

outside, grabbed Mr. Wood around the waist pulling him away from Mrs. Wood to calm him down. Mrs. Wood then started back toward the house. Mr. Matson noticed that Mr. Miller's truck window was broken and made a statement to Mr. Miller about it. Mr. Matson then exclaimed, "Oh," and Mr. Bailey saw a flash of light and a heard a loud booming noise coming from the truck. Mr. Matson fell back to the ground, mortally wounded from the blast of a 12–gauge shotgun. Mr. Miller drove away in his truck and surrendered at the Andrew County Sheriff's Office.

An autopsy performed on Mr. Matson's body revealed that the shotgun blast struck Mr. Matson in the chest shredding the right lower lobe of his lung, fracturing his ribs, and perforating parts of his heart and liver. The medical examiner testified that the absence of any stripling or tattooing indicated that the blast had been fired from a distance of six to ten feet.

Mr. Miller was charged by information with second degree murder, voluntary manslaughter, involuntary manslaughter, and armed criminal action. At trial, Mrs. Wood testified for the defense. She stated that Mr. Wood and Mr. Matson immediately walked to the driver's side of the truck after arriving at her grandmother's house and started yelling at Mr. Miller. She also testified that Mr. Wood deliberately broke the truck window and that Mr. Matson was leaning in the truck window swinging at Mr. Miller.

Mr. Miller testified in his own behalf. He claimed that he purchased the 12–gauge shotgun approximately two weeks earlier after his brother told him that Mr. Wood had threatened his life. He testified that when Mr. Wood's car pulled up behind his truck, he locked the doors of the truck. Mr. Wood and Mr. Matson began yelling at him, calling him obscene names, and threatening to "kick his ass." Mr. Matson reached through the window swinging at and hitting Mr. Miller in the head. As Mr. and Mrs. Wood began to argue, Mr. Miller picked the shotgun up off the floorboard of the truck and laid it on his lap. Mr. Wood grabbed the window that was rolled down four or five inches and shook it

until it broke, and he and Mr. Matson continued to swing at Mr. Miller through the window striking him in the head several times. Mr. Miller testified that he then slid over to the middle of the seat with the shotgun on his lap. Mr. Matson, who was still swinging at him through the window, then reached down toward the shotgun. Mr. Miller explained that he pumped the shotgun to chamber a round and that the shotgun fired when the pump returned to the forward position. On cross-examination, Mr. Miller testified, "I do not know that I actually pulled the trigger intentionally." Mr. Miller stated that during the whole incident, he believed Mr. Wood and Mr. Matson were going to drag him out of the truck and either beat him to death or take the shotgun and use it on him.

The jury was instructed on second degree murder, voluntary manslaughter, involuntary manslaughter, and armed criminal action. The court included self-defense in the instructions on second degree murder and voluntary manslaughter but not in the instruction on involuntary manslaughter. The jury returned not-guilty verdicts on the second degree murder and voluntary manslaughter counts. It found Mr. Miller guilty of involuntary manslaughter and armed criminal action, and the court sentenced Mr. Miller to consecutive terms of 20 and 10 years imprisonment, respectively.

Mr. Miller filed a *pro se* Rule 29.15 motion for postconviction relief seeking to vacate his convictions and sentence. An amended motion was filed by counsel on Mr. Miller's behalf. The motions alleged that the jury was "[u]nconstitutionally selected and impaneled" because he was not present during the final jury selection. The motions also alleged that trial counsel was ineffective in failing to lay the proper foundation for introduction of laboratory reports showing Mr. Matson's blood alcohol content and in failing to call potential defense witnesses to testify. The motion court denied Mr. Miller's motion following an evidentiary hearing. This consolidated appeal followed.

## I. DIRECT APPEAL

### A. AMENDMENT OF INFORMATION

■ In his first point on his direct appeal, Mr. Miller claims that the trial court erred in

allowing the State to amend the information on the day of trial to charge him as a prior and persistent offender. He contends that the amendment, which elevated the range of punishment, constituted vindictive prosecution in retaliation for his assertion of his right to a trial. Specifically, he argues that the State amended the information to add the prior and persistent offender status only in retaliation to his not accepting its plea offer early in the case.

Mr. Miller did not preserve this issue in his motion for a new trial and requests plain error review under Rule 30.20. Under Rule 30.20, relief will be granted only if the error so substantially affects the right of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Clemons,* 946 S.W.2d 206, 224 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997).

■■■■■ To prove an allegation of prosecutorial vindictiveness, a defendant must show that the additional charges were brought solely to penalize him for exercising his constitutional rights and cannot be justified as a proper exercise of prosecutorial discretion. *State v. Molinett,* 876 S.W.2d 806, 809 (Mo. App.1994). The decision whether to prosecute and what charges to file generally rests entirely within the prosecutor's discretion. *Id.* Delaying the filing of additional or more serious charges is a constitutionally acceptable strategy in plea bargaining. *Id.* "A pretrial change in the charging decision is the result of the 'give-and-take' of plea bargaining and there is no element of punishment or retaliation when the accused is free to accept or reject the prosecution's offer." *Id.* (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)).

In 1994, this court decided *State v. Molinett,* 876 S.W.2d 806 (Mo.App.1994), a case very similar to the instant case. In *Molinett,* the State offered, during plea negotiations, not to charge the defendant as a "prior drug offender" or as a "prior offender" in exchange for the defendant's guilty plea to distribution of a controlled substance. *Id.* at 808. The defendant originally agreed to the plea offer but subsequently withdrew his acceptance and asserted his right to trial. *Id.*

The State was then permitted leave to file an information in lieu of indictment charging the defendant as a prior drug offender and as a prior offender. *Id.*

On appeal, this court rejected the defendant's claim that the State's conduct constituted prosecutorial vindictiveness. *Id.* at 809. It found that the recidivist charges were supported by the record, that the prosecutor did not add the recidivist charges solely to penalize the defendant for asserting his right to trial, and that the prosecutor's conduct was a proper exercise of prosecutorial discretion. *Id.* The court concluded, "The prosecutor's action in filing under the prior felony statutes enhancing the penalty was an acceptable response in light of the parties' failure to reach a plea agreement." *Id.* at 809–810.

In this case, the prosecutor's amendment of the information to charge Mr. Miller as a prior and persistent offender was a proper exercise of prosecutorial discretion and did not constitute prosecutorial vindictiveness. The recidivist charges were supported by the evidence and were not brought solely to punish Mr. Miller for exercising his constitutional right to trial. The prosecutor could legitimately delay the filing of the recidivist charges to facilitate plea bargaining. The trial court did not plainly err in allowing the State to amend the information on the day of trial. Point one is denied.

## B. SENTENCE AS A PRIOR AND PERSISTENT OFFENDER

■■■ In his next point on appeal, Mr. Miller claims that the trial court committed plain error and exceeded its jurisdiction when it entered a written judgment and sentence inconsistent with the oral pronouncement of sentence. In the written judgment and sentence, the trial court sentenced Mr. Miller as a prior and persistent offender to consecutive terms of 20 and 10 years imprisonment for involuntary manslaughter and armed criminal action, respectively. At the sentencing hearing, however, the court did not state that Mr. Miller was being sentenced as a prior and persistent offender. Mr. Miller contends on appeal, therefore,

that the trial court's material amendment of his sentence outside of his presence from oral to written form was improper. Mr. Miller did not preserve this claimed error in his motion for a new trial and requests plain error review under Rule 30.20.

In making his argument that the written sentence may not materially deviate from the oral pronouncement of sentence before the defendant, Mr. Miller relies on the case, *McCaine v. State*, 891 S.W.2d 419 (Mo. App.1994). To the extent, however, that *McCaine* stood for the proposition that a sentencing court's failure to state at the sentencing hearing that the defendant was being sentenced as a prior, persistent, or class X offender precluded such enhanced sentence, it was overruled by the Missouri Supreme Court case, *Johnson v. State*, 938 S.W.2d 264, 266 (Mo.App.1997). *State v. Jordan*, 947 S.W.2d 95, 97 (Mo.App.1997). Once the trial court finds beyond a reasonable doubt that the defendant has been found guilty of two prior felonies, it has no discretion but to find the defendant to be a persistent offender. *Johnson*, 938 S.W.2d at 266; *Jordan*, 947 S.W.2d at 97. "Having made that prior determination, the enhancement provision is automatic, and a trial court is not obligated to repeat at sentencing a previous finding that the defendant was a prior and persistent offender or even to mention those findings during the sentencing hearing." *Jordan*, 947 S.W.2d at 97. A sentencing court's failure to mention such previous findings during formal pronouncement of the sentence is irrelevant. *Johnson*, 938 S.W.2d at 266; *Jordan*, 947 S.W.2d at 97.

In this case, the State charged Mr. Miller as a prior and persistent offender and presented evidence to the court supporting the allegations. The trial court found beyond a reasonable doubt that Mr. Miller was a prior offender and a persistent offender under Missouri law. The trial court was not required to repeat its findings at the time of oral pronouncement of the sentence. *Jordan*, 947 S.W.2d at 97. The trial court did

not err in entering its written judgment and sentence sentencing Mr. Miller as a prior and persistent offender.[1] Point two is denied.

## C. INVOLUNTARY MANSLAUGHTER INSTRUCTION

In Mr. Miller's next point on appeal, he claims that the trial court erred in submitting to the jury the involuntary manslaughter instruction. He contends that no evidence of recklessness was presented to support the instruction. Instead, he argues, the evidence showed only intentional conduct.

A person commits the crime of involuntary manslaughter if he "recklessly" causes the death of another. § 565.024.1(1), RSMo 1994; *State v. Coleman*, 949 S.W.2d 137, 142 (Mo.App.1997); *State v. Albanese*, 920 S.W.2d 917, 925 (Mo.App.1996). Thus, to submit an instruction on involuntary manslaughter, sufficient evidence must be presented to support a finding of recklessness. *Albanese*, 920 S.W.2d at 925.

A person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4, RSMo 1994; *Coleman*, 949 S.W.2d at 142. "Recklessness" involves conscious risk creation and resembles "knowingly" in that a state of awareness is involved, but the awareness is of risk, that is, of a probability less than a substantial certainty. *Coleman*, 949 S.W.2d at 142–143.

In this case, sufficient evidence of recklessness was presented to support the submission of the involuntary manslaughter instruction. Testifying in his own defense, Mr. Miller stated that as Mr. Matson was swinging at him through the broken truck window, he picked up the shotgun from the floorboard of the truck and laid it on his lap. Mr. Miller then testified that when Mr. Matson reached

---

1. In a footnote to his brief filed on appeal, Mr. Miller acknowledges the existence of *Johnson* but argues that it should not be applied retroactively to his case. A similar argument was made in *State v. Gordon*, 948 S.W.2d 673 (Mo.App.1997), and rejected. Because Mr. Miller's case is on direct appeal and the matter is a substantive one, the *Johnson* holding may be applied retroactively. *Id.* at 675.

for the weapon, he "brought the gun up and pumped it." He then stated, "I really don't know if I already had my finger on the trigger or what, but the gun went off when, when the pump c[a]me back up to the forward position." During cross-examination by the State, Mr. Miller testified, "I do not know that I actually pulled the trigger intentionally." He also stated that the safety mechanisms of the weapon were off when the weapon was on his lap. Mr. Miller's testimony, although not an unequivocal assertion that the shooting was unintentional, must be viewed in the light most favorable to the State,[2] and could reasonably have been understood as an assertion that he did not intentionally pull the trigger of the weapon thereby supporting the involuntary manslaughter instruction. The jury could have found that by raising the loaded shotgun to his lap, pumping the shotgun to chamber a round, and pointing it at or in the direction of the victim with the safety off, Mr. Miller acted recklessly by consciously disregarding a substantial and unjustifiable risk that the victim would be shot and killed.

A similar determination was made in *State v. Miller*, 772 S.W.2d 782 (Mo.App.1989). In *Miller*, the defendant stood outside a tavern holding a firearm at his waist. *Id.* at 783. Twenty-five bystanders were also standing outside the tavern. *Id.* The weapon fired, and the bullet struck one of the bystanders. *Id.* The defendant testified that he held the weapon to keep an aggressor away, not to shoot him, and that the weapon fired accidently when someone tried to grab it. *Id.* The court held that the jury could have found that the defendant did not intentionally fire the weapon at the person he feared but that the defendant was reckless in handling the weapon and pointing it toward the tavern with the safety off. *Id.*

The dissent contends that the evidence only supports a finding of intentional shooting of the victim. Specifically, it would find, as a matter of law, that because Mr. Miller intentionally picked up the shotgun and chambered a round that he intentionally shot the victim. However, whether Mr. Miller intentionally aimed the weapon at the victim and intentionally pulled the trigger or whether he recklessly and carelessly handled the weapon causing it to discharge is a question of fact for the jury, not this court. The fact that all of Mr. Miller's acts regarding the shotgun were intentional before the trigger was pulled did not determine that, as a matter of law, the trigger was pulled intentionally. Although Mr. Miller's conduct immediately before the shooting was relevant to whether the shooting was intentional or unintentional, his conduct did not conclusively determine that he intentionally pulled the trigger of the shotgun in light of his testimonial denial that he did not intend to shoot the victim.

The dissent further contends, based on *State v. Isom*, 906 S.W.2d 870 (Mo.App.1995), that Mr. Miller's testimonial denial that he did not intend to kill the victim did not authorize the involuntary manslaughter instruction. The instant case, however, is distinguishable from *Isom*. In *Isom*, the defendant's testimony indicated that he intended to shoot the victim in the upper portion of the body, but not to kill him. *Id.* at 873. In finding that the evidence did not support an instruction on involuntary manslaughter, the *Isom* court stated that a testimonial denial of an intent to kill may not authorize an involuntary manslaughter instruction where a defendant's conduct was likely to produce death. *Id.* The court found that the defendant's conduct, shooting the victim in the upper portion of the body, constituted conduct likely to produce death, and, therefore, the involuntary manslaughter instruction was not authorized. *Id.*

In the instant case, Mr. Miller testified that he raised the shotgun and chambered a round to protect himself from persons he believed to be violent. He did not state that he intended to shoot the victim. Unlike intentionally shooting someone in the upper portion of the body as in *Isom*, Mr. Miller's conduct, short of firing the weapon, was not in itself conduct likely to produce death. His testimonial denial that he did not intend to shoot the victim, therefore, authorized the involuntary manslaughter instruction. The trial court did not err in submitting to the

2. *State v. Miller*, 772 S.W.2d 782, 783 (Mo.App. 1989).

jury the involuntary manslaughter instruction. Point three is denied.

### D. SELF–DEFENSE INSTRUCTION

■ Mr. Miller next claims that the trial court erred in refusing to submit an instruction on self-defense in connection with the involuntary manslaughter instruction. As argued in point three above, Mr. Miller contends that the evidence indicated that "he intended to perform all of the acts associated with the shotgun's discharge in self-defense of his person."

■ Missouri courts do not recognize a claim of accidental self-defense. *State v. Houcks*, 954 S.W.2d 636, 638 (Mo.App.1997). The defenses of self-defense and accident are inconsistent. *Houcks*, 954 S.W.2d at 638; *State v. Albanese*, 920 S.W.2d 917, 925 (Mo.App.1996); *State v. Miller*, 772 S.W.2d 782, 784 (Mo.App.1989). In claiming self-defense, the defendant acknowledges intentionally inflicting injury or death on another person while asserting such conduct was necessary because of apprehension of great bodily harm or death. *Houcks*, 954 S.W.2d at 638; *Miller*, 772 S.W.2d at 784. The claim of accident or recklessness, on the other hand, involves an unintentional act. *Id.* Despite the inconsistency of the two defenses, a defendant may be entitled to have both submitted to the jury if they are proved by proper evidence. *Houcks*, 954 S.W.2d at 639. The evidence necessary to justify instructions on the inconsistent defenses must be offered by the State or proved by third party witnesses for the defendant. *Id.* The defendant alone cannot provide the basis for inconsistent defenses. *Id.*

In this case, Mr. Miller's assertion that he was acting in self-defense when Mr. Matson was killed was inconsistent with his defense that he did not intentionally shoot the victim. Testifying in his own defense, Mr. Miller stated that he believed Mr. Wood and Mr. Matson were going to drag him out of the truck and either beat him to death or take the shotgun and use it on him. He also testified that he did not intentionally pull the

trigger of the shotgun but that it accidently discharged when he pumped the weapon. Mr. Miller's testimony amounted to a claim of accidental self-defense. While self-defense might justify production of a weapon to prevent being attacked,[3] it would not justify the reckless handling of it. *See Miller*, 772 S.W.2d at 784. Furthermore, Mr. Miller's testimony alone provided the basis for the inconsistent defenses. He, therefore, was not entitled to have both submitted to the jury. The trial court did not err in refusing to submit an instruction on self-defense in connection with the involuntary manslaughter instruction. Point four is denied.

### E. ADMISSION OF LABORATORY REPORTS

■ In Mr. Miller's fifth point on appeal, he claims that the trial court erred in excluding laboratory reports showing the victim's blood alcohol content. The court refused to admit the reports because the foundational requirements for the business records exception to the hearsay rule had not been met.

Analysis of the Business Records as Evidence Law, section 490.680, RSMo 1994, is, however, unnecessary to resolve this point on appeal. Evidence of the blood alcohol content of the victim related only to Mr. Miller's self-defense claim that he had to use deadly force to protect himself from the three drunk, violent men. Mr. Miller, however, was acquitted of the charges for which self-defense was applicable-second degree murder and voluntary manslaughter. As discussed in point four, a self-defense instruction could not be given in connection with the involuntary manslaughter instruction in this case. Even if the exclusion of the evidence of Mr. Matson's blood alcohol content was erroneous, the error was harmless because the victim's level of intoxication related only to the offenses for which Mr. Miller was acquitted, not the offense for which he was convicted, involuntary manslaughter. *See State v. Wayman*, 926 S.W.2d 900, 905–906 (Mo.App.1996)(improper admission of evidence will not require reversal if the evi-

---

**3.** Mr. Miller, however, admitted that prior to firing the weapon, he did not warn the men that he had a weapon.

dence relates solely to the count of which defendant was acquitted). The trial court, therefore, did not err in excluding the laboratory reports. Point five is denied.

## II. RULE 29.15 MOTION

In his final three points on appeal, Mr. Miller claims that the motion court erred in denying his Rule 29.15 motion for postconviction relief following an evidentiary hearing. He contends that counsel was ineffective in failing to lay the proper foundation for introduction of laboratory reports showing the victim's blood alcohol content and in failing to call certain potential defense witnesses to testify. He also contends that he was denied his right to be present at all critical stages of the trial because he was absent from the courtroom at the time his trial attorney made his strikes for cause and peremptory challenges.

■■■ Appellate review of the denial of a postconviction motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997). Findings and conclusions are clearly erroneous only if after a review of the entire record the court is left with a definite and firm impression that a mistake has been made. *Taylor,* 929 S.W.2d at 224.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

■■■ To prevail on an ineffective assistance of counsel claim, the movant must show that (1) trial counsel's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) the deficient performance prejudiced the movant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice results only where trial counsel's acts or failures to act are outcome determinative. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The movant

must demonstrate a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.*

■■■ Mr. Miller first asserts that trial counsel was ineffective in failing to lay the proper foundation for introduction of laboratory reports showing the victim's blood alcohol content under the business records exception to the hearsay rule. As discussed in point five above, the blood alcohol content of Mr. Matson was relevant only to Mr. Miller's self-defense claim. It was not relevant to the charge for which he was convicted, involuntary manslaughter. Counsel's failure to introduce irrelevant evidence, therefore, did not constitute ineffective assistance of counsel and did not prejudice Mr. Miller. *State v. Dumas,* 898 S.W.2d 689, 691 (Mo.App.1995). Point six is denied.

■■■ Mr. Miller next asserts that trial counsel was ineffective for failing to call certain potential defense witnesses to testify. Specifically, he faults trial counsel for failing to call Sergeant Charles Litton, Charlene O'Callaghan, Deputy Alvin Watts, and Mike Wood to testify for the defense. He contends the witnesses were "needed to piece together and support [his] contentions of what happened [that] night." Mr. Miller claims Sergeant Litton would have testified that he observed Mr. Miller's eye was puffy three days after the shooting which would have corroborated his story that the three men were hitting him in the head through the truck window. He claims that Deputy Watts would have testified that Mr. Wood and Mr. Bailey had been drinking prior to the shooting which would have corroborated other evidence presented at trial that the three men had been drinking. Mr. Miller claims that Ms. O'Callaghan would have testified that on the night of the shooting, she observed a car suddenly pull out from a church parking lot with the headlights turned off. He contends that Ms. O'Callaghan's testimony would have corroborated his story that the three men were laying in wait for him to arrive so they could kill or seriously injury him.

■■■ To establish that trial counsel was ineffective for failing to call a witness to

testify, the movant must show that his attorney's failure to call the witness was something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified if called; and that the witness's testimony would have provided the defendant with a viable defense. *State v. Maddix,* 935 S.W.2d 666, 672 (Mo. App.1996). The decision not to call a witness to testify is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the movant clearly establishes otherwise. *State v. Brown,* 937 S.W.2d 233, 236 (Mo.App. 1996).

The proposed testimony of Sergeant Litton, Deputy Watts, and Ms. O'Callaghan was relevant only . to the issue of self-defense. Mr. Miller was acquitted of intentionally shooting Mr. Matson. Self-defense was not a defense to involuntary manslaughter, therefore, the witnesses' proposed testimony relating to the issue was unnecessary and irrelevant and could not have provided Mr. Miller with a viable defense. Thus, counsel was not ineffective for failing to call Sergeant Litton, Deputy Watts, or Ms. O'Callaghan to testify.

■ Likewise, counsel was not ineffective in failing to call Mike Wood to testify. The proposed testimony of Mr. Wood was consistent with the State's evidence at trial and indicated that Mr. Miller had deliberately killed Mr. Matson after Mr. Matson taunted him about the broken window on his truck. Counsel testified at the evidentiary hearing that he decided not to call Mr. Wood because he was a very good friend of the victim and he was afraid Mr. Wood would "try to get revenge on [his] client." The motion court found that "trial counsel's failure to call Mike Wood was an extremely wise exercise of trial strategy." It further stated, "If Mr. Wood had testified as he did in the PCR hearing, there is a strong likelihood that [Mr. Miller] would have been convicted of a higher-degree of homicide." Counsel's decision not to call a witness whom he fears might hurt his client's case is a proper strategic and tactical decision that cannot constitute ineffective assistance of counsel. *State v. Williams,* 853 S.W.2d 371, 377 (Mo.App.1993). Point seven is denied.

## B. DEFENDANT'S ABSENCE FROM COURTROOM DURING JURY SELECTION

■ In his final point on appeal, Mr. Miller claims that he was denied his constitutional rights to be present at all critical stages of the trial and to a fair and impartial jury. Specifically, he contends that the court failed to have him brought back from lunch at the time the strikes for cause and the peremptory challenges were made and that he was prejudiced because his absence allowed trial counsel to disregard his instructions regarding the veniremen he wanted on his jury.

■ A defendant has a Sixth Amendment Confrontation Clause right to be present, and a due process right to be present, "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *State v. Smulls,* 935 S.W.2d 9, 17 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2415, 138 L.Ed.2d 180 (1997)(quoting *U.S. v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)). A defendant's absence, however, from a pretrial hearing where "no witnesses to confront or evidence against defendant" was presented does not violate the defendant's Sixth Amendment right. *Smulls,* 935 S.W.2d at 17. Accordingly, a defendant's absence from a hearing where peremptory challenges are made does not deny the defendant his right to be present at all critical stages of the trial. *Leisure v. State,* 828 S.W.2d 872, 877 (Mo. banc 1992), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); *Montgomery v. State,* 461 S.W.2d 844, 847 (Mo.1971). As the Missouri Supreme Court stated in *Montgomery v. State,* 461 S.W.2d 844, 847 (Mo.1971), "The fact that defendant was not present when counsel performed the messenger service of advising the court of the names of those jurors to be peremptorily challenged is immaterial." *Id.*

In this case, Mr. Miller was not denied his constitutional right to be present at all critical stages of the trial by his absence from the courtroom when strikes for cause and peremptory challenges were communicated. The proceeding in which the jury was finally selected presented no witnesses to confront or evidence against Mr. Miller. Although

Mr. Miller contended at the evidentiary hearing that he specifically told counsel he wanted two particular veniremen on the jury and that counsel ignored his wishes, counsel testified that he listened to the opinions of his client regarding jury selection, that he did not recall Mr. Miller telling him he wanted the two veniremen on the jury, and that he ultimately made the final decision about the jury. The motion court found that Mr. Miller admitted to participating in jury selection and that Mr. Miller's input and suggestions were fully considered by trial counsel. It also found Mr. Miller's testimony regarding what he told counsel not credible. Deference is given to the motion court's superior opportunity to judge the credibility of the witnesses. *State v. Simmons*, 955 S.W.2d 729, 747 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1081, 140 L.Ed.2d 138 (1998). The motion court's denial of Mr. Miller's Rule 29.15 motion for postconviction relief was not clearly erroneous. Point eight is denied.

The judgment of convictions is affirmed, and the denial of the Rule 29.15 motion is affirmed.

SMART, J., concurring.

TURNAGE, Senior Judge, dissenting.