

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MICHAEL L. OGLESBY, | ) | |
| | ) | |
| Appellant, | ) | WD86535 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | June 3, 2025 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Marco A. Roldan, Judge**

**Before Division Three:** W. Douglas Thomson, Presiding Judge, and
Karen King Mitchell and Thomas N. Chapman, Judges

Michael Oglesby appeals, following an evidentiary hearing, the denial of his

Rule 29.15[1] motion. Oglesby raises five points on appeal. Points I-III allege that trial

counsel was ineffective in failing to (1) obtain and use confidential records from the

Department of Social Services, Children's Division (DSS) to impeach the minor

children's credibility; (2) present evidence that one of the minor children was diagnosed

with a disorder known to cause lying; and (3) move to dismiss the charges on grounds of

---

[1] All rule references are to the Missouri Supreme Court Rules (2023), unless
otherwise noted.

prosecutorial vindictiveness following Oglesby's indictment on additional charges after his first trial. In Point IV, Oglesby alleges his due process rights were violated by the State's failure to disclose confidential DSS records allegedly containing the children's allegations of abuse against other individuals. Point V alleges the motion court clearly erred in failing to compel production of unredacted copies of the DSS records. Finding no error, we affirm.

## Background[2]

In 2014, Oglesby and his wife, both retired schoolteachers, fostered and adopted Child 1 and Child 2 and, by 2016, had fostered and adopted Child 3. The three children were sisters who had been in and out of numerous foster homes, with the oldest, Child 1, having been in seventeen previous foster placements. Following a hotline call to DSS in

---

[2] Although both parties cite the trial transcript in their briefs, neither party requested that this court take judicial notice of the underlying case file, and neither party filed a motion to transfer the record from the underlying case to this court on appeal. Thus, the trial transcript is not part of the record on appeal.

"The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a). It is the appellant's responsibility to prepare the record on appeal. *Id*. at (b)-(c). Where "the grounds for relief set forth in the amended Rule 29.15 motion are dependent entirely on what was done, or not done, during the trial of the underlying case," the appellant in the post-conviction action must ensure that documents from the underlying case are made part of the record on appeal from the post-conviction action. *W.F.W. v. State*, 779 S.W.2d 724, 725 (Mo. App. S.D. 1989). It is not sufficient for the motion court to take judicial notice, as that act, alone, does not make the documents part of our record on appeal. *Id*. Because we cannot consider evidence not in the record, *State v. Sumowski*, 794 S.W.2d 643, 646 (Mo. banc 1990), the only information available to us is the transcript and legal file from Oglesby's Rule 29.15 proceedings. We may, however, infer that the absent documents, exhibits, or transcripts "would be favorable to the [motion] court's ruling and unfavorable to [Appellant's] argument." *State v. Brumm*, 163 S.W.3d 51, 56 (Mo. App. S.D. 2005).

August 2016, in which the three children alleged sexual abuse against Oglesby, they were removed from the Oglesby home.

In August 2017, Oglesby was charged with eight crimes, all involving Child 1: four counts of first-degree statutory sodomy, one count of first-degree attempted statutory sodomy, two counts of first-degree child molestation, and one count of sexual misconduct. At the conclusion of his jury trial in May 2018, Oglesby was acquitted on four counts of statutory sodomy, and a mistrial was declared on the remaining four counts. In June 2018, Oglesby was indicted on seven additional counts involving the other two adopted sisters: three counts of statutory sodomy and two counts of child molestation involving Child 2, and two counts of statutory sodomy involving Child 3. Following joinder of the four mis-tried counts involving Child 1 with the seven additional counts, a January 2019 jury trial resulted in Oglesby's conviction on all eleven counts. Oglesby is now serving a 160-year sentence.

Oglesby's direct appeal in 2021 resulted in this Court affirming his convictions and sentences.[3] Oglesby filed a timely Rule 29.15 motion alleging ineffective assistance of trial counsel for failing to (1) seek and use DSS records, which allegedly showed that the children had made false abuse allegations against previous foster family members; (2) present the testimony of a therapist about Child 1's diagnosis with Reactive Attachment Disorder (RAD); and (3) file a motion alleging prosecutorial vindictiveness.[4] Oglesby's

---

[3] *State v. Oglesby*, 621 S.W.3d 500 (Mo. App. W.D. 2021).
[4] Oglesby's claim regarding the therapist was raised on direct appeal as an issue of prosecutorial misconduct based on the prosecutor's allegedly misrepresenting to the court that no one ever diagnosed Child 1 with RAD, and his claim of prosecutorial

Rule 29.15 motion also alleged that the State had violated his due process rights by failing to disclose confidential DSS records.

Oglesby's trial counsel, for both criminal trials, had also represented Oglesby and his wife in family court proceedings to terminate their parental rights to the three children. As a result, prior to Oglesby's two criminal trials, trial counsel had extensive access to DSS records, including records involving the three children and transcripts from proceedings in family court. During his testimony at the Rule 29.15 hearing, trial counsel described the DSS documents as a "wealth of information" available to him as he prepared for Oglesby's criminal trials. According to trial counsel, he had evidence that "these girls had lied so many times" that he needed to consider how best to "paint them as liars when [he] thought [he] had enough evidence that they painted themselves as liars." Trial counsel knew, among other things, that a therapist had doubted the veracity of Child 1's accusation of rape against a foster sibling; that Child 1 had recanted an allegation of abuse against a former foster parent; and that Child 2 and Child 3 had accused another foster parent of abuse and run away from that home.[5] His strategy at trial was to use what he "felt . . . was important" but not "everything at [his] disposal" because of the "special care" one must take in cross-examining a child who is also a

vindictiveness was also raised on direct appeal as a claimed violation of due process when the court denied his motion for new trial. *Oglesby*, 621 S.W.3d at 508-20.

[5] The record disclosed that the names of foster families involved in those incidents were known to both Oglesby and his counsel. In response to a question about whether "[i]t was clear that [trial counsel] knew about all of this before [Oglesby's] second trial," Oglesby answered, "Yes."

victim. At Oglesby's second trial, trial counsel elicited testimony from all three children that they had lied "multiple times."

Trial counsel elected not to call as a witness a therapist who had worked with the Oglesbys, and in particular Child 1. The therapist believed that Child 1 met the criteria for RAD and that lying was one of the disorder's symptoms. Trial counsel testified that he had spoken with the therapist about testifying, had prepared a trial folder about her testimony, and had defeated the State's pretrial motion *in limine* to exclude the therapist's testimony. Although he could not specifically remember why he chose not to call the therapist at either of Oglesby's trials, counsel testified that he believed her testimony was unnecessary because he had "successfully put in front of the jury" his theory of the case and, at "multiple times," had gotten all three children to "call themselves liars on the stand."[6]

After filing his Rule 29.15 motion, Oglesby attempted to obtain confidential records from DSS about allegations allegedly made by the children against other foster family members. Oglesby claimed that he needed the records to demonstrate that trial counsel was ineffective in not using such records to impeach the children's credibility by demonstrating that they previously made false allegations of abuse and to demonstrate

---

[6] It appears that a pretrial ruling had precluded trial counsel from calling the therapist at Oglesby's first trial. *Oglesby*, 621 S.W.3d at 514-15. At Oglesby's second trial, "[t]he court granted the defense's request to introduce evidence regarding RAD and whether [Child 1] had a diagnosis of RAD," but Oglesby did not put on this evidence. *Id*. at 518.

that the prosecutor had violated *Brady v. Maryland*[7] by failing to provide the DSS records to Oglesby at trial.

Oglesby's subpoena to DSS demanded production of "[a]ll child abuse and neglect hotline reports and all subsequent investigations of any allegations of abuse or neglect made by [the three children]." In response, DSS filed a motion to quash, and the motion court ordered DSS to produce the documents for the court's *in camera* review. Following that review, the motion court determined that some of the reviewed documents were "discoverable" as part of the post-conviction trial and some were not.[8] As to the "discoverable" documents, the motion court ordered DSS to redact "non-parties and any other confidential information in accordance [with] Missouri law" and then produce the documents to Oglesby. According to Oglesby, DSS completely redacted all but one document, which was the hotline report involving the children's abuse claims against Oglesby. After receiving the redacted documents, Oglesby filed a motion to compel. In response, DSS argued that it had fully complied with the motion court's order by providing documents that were redacted according to Missouri law. The motion court refused to compel production of the unredacted documents to Oglesby.

---

[7] Referring to *Brady v. Maryland*, 373 U.S. 83 (1963).
[8] The motion court provided no details about its reasoning or what it found in any of the DSS records.

In July 2023, the motion court denied Oglesby's Rule 29.15 motion, finding as follows:

1.  Oglesby failed to show "that [trial counsel's] performance fell below the standard of care of a reasonable attorney" as to his claim in Point I;

2.  Oglesby failed to rebut the presumption of "reasonable trial strategy" or show prejudice due to trial counsel's decision not to call the therapist at his second trial as to her diagnosis of Child 1 with RAD;

3.  Oglesby failed to show any prejudice resulting from trial counsel's failure to move for dismissal on grounds of prosecutorial vindictiveness;

4.  Oglesby failed to show the State's noncompliance with "Rule 25.03 or its discovery obligation under *Brady v. Maryland*" because the prosecutor produced all the documents in their possession;

5.  Oglesby's claim regarding DSS's failure to produce unredacted confidential records did not state a cognizable Rule 29.15 claim.[9]

This appeal followed.

## Analysis

Oglesby raises five points on appeal. Points I-III allege that trial counsel was ineffective in failing to (1) obtain and use confidential records from DSS to impeach the minor children's credibility; (2) present evidence that one of the minor children was diagnosed with a disorder known to cause lying; and (3) move to dismiss the charges on

---

[9] Both this court and the Missouri Supreme Court denied Oglesby's petitions for writs of mandamus to order production of the confidential records.

grounds of prosecutorial vindictiveness following Oglesby's indictment on additional charges after his first trial. In Point IV, Oglesby alleges his due process rights were violated by the State's failure to disclose during the second criminal trial confidential DSS records containing the children's allegations of abuse against other individuals. Point V alleges the motion court's clear error in failing to compel production of unredacted copies of these records. Finding no error, we affirm.

**Standard of Review**

Appellate review of a court's action on a Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). The motion court's ruling is presumed correct and deemed "clearly erroneous only if, after reviewing the entire record, we are left with a firm impression that a mistake has been made." *Haidul v. State*, 425 S.W.3d 148, 150 (Mo. App. E.D. 2014). As in this case, the motion court's findings "carry special weight [when] the motion court also was the trial court." *Joos v. State*, 277 S.W.3d 802, 804 (Mo. App. S.D. 2009).

I. **The motion court did not clearly err in finding trial counsel was not ineffective in failing to obtain and use DSS records or in failing to present testimony from a therapist to impeach the credibility of the children at trial (Points I and II).**

Oglesby argues that trial counsel was ineffective both in (1) failing to obtain and use at his second criminal trial DSS records, which Oglesby claims contained evidence "that the alleged victims had previously made numerous unsubstantiated allegations of abuse against others" that could have been used to impeach the children's credibility; and

8

(2) failing to present the testimony of Child 1's therapist as to the diagnosis and symptoms of RAD.

"The right to effective assistance of counsel in a criminal trial is a fundamental aspect of the right to a fair trial." *Smiley v. State*, 196 S.W.3d 674, 676 (Mo. App. S.D. 2006) (quoting *Shopbell v. State*, 686 S.W.2d 521, 523 (Mo. App. W.D. 1985)). To establish ineffective assistance, a post-conviction movant must prove that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, under *Strickland*, the movant must prove that (1) "counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) [movant] was prejudiced by that failure." *Johnson v. State*, 388 S.W.3d 159, 163 (Mo. banc 2012) (citing *Strickland*, 466 U.S. at 687).

An ineffective assistance claim must "overcome the strong presumption that . . . counsel's performance was objectively reasonable and effective." *Byrd v. State*, 329 S.W.3d 718, 722 (Mo. App. S.D. 2010). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006); *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (recognizing the "near-complete deference" afforded to trial counsel's decisions that are "strategic in nature"); *Tucker v. State*, 468 S.W.3d 468, 474-75 (Mo. App. E.D. 2015) (holding that defense counsel employed reasonable trial strategy in not cross-examining two child witnesses at all, as he was "wary of alienating the jury by upsetting the girls"). "The choice of one reasonable trial strategy

9

over another is not ineffective assistance." *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012).  If the post-conviction movant fails to prove either deficient performance or resulting prejudice, we need not consider the other prong.  *Shaw v. State*, 636 S.W.3d 596, 600 (Mo. App. W.D. 2021).

**A.  Oglesby failed to establish that trial counsel's decision not to seek or offer certain DSS records was ineffective.**

"To prevail on a claim of ineffective assistance of counsel for failure to investigate," a movant must allege and prove the following:  (1) "what information trial counsel failed to discover"; (2) "that a reasonable investigation would have resulted in the discovery of such information"; and (3) "the information would have aided and improved the defense."  *Walker v. State*, 694 S.W.3d 69, 78 (Mo. App. W.D. 2024).  Here, Oglesby failed to establish any of the three requirements.

First, Oglesby failed to prove there was information that trial counsel failed to discover, given that trial counsel was apparently already aware of the DSS records and their contents.  At the motion hearing, trial counsel testified that he had represented Oglesby in family court and, through that representation, had access to a number of DSS records.  Although trial counsel testified, "I don't remember," as to whether he received records about three specific allegations by the girls of alleged abuse in other foster homes, this fact, alone, does not demonstrate that trial counsel did *not* receive these records.  There were many specifics about Oglesby's criminal trial that trial counsel did not recall.  As to information contained in the DSS records, counsel testified that he was privy to a "wealth of information" through his representation of Oglesby and his wife in

10

family court. He also had a "good exchange of information" with the prosecutor's office. During the hearing, trial counsel was questioned about three incidents that he allegedly could have learned about from the DSS records: Child 1's recantation of an allegation of rape against a foster brother and allegations by two of the sisters of non-sexual abuse by previous caregivers. Although counsel did not recall whether he received records regarding those three incidents, evidence presented at the Rule 29.15 hearing showed that Oglesby knew that Child 1 had recanted an allegation of rape against a foster brother and that both Child 1 and Child 2 had made allegations of non-sexual abuse against two previous caregivers that were either denied by the caregivers or recanted by the children.[10] And, when cross-examined during the hearing, trial counsel acknowledged receiving information directly from the prosecutor that Child 1 had previously recanted a rape allegation against a foster brother.

Second, even if trial counsel did not have all of the information in the DSS documents, Oglesby cannot show that a "reasonable investigation" would have led to its discovery, when the motion court (also the trial court here) directed DSS to produce the documents only after making statutorily mandated redactions, all as more fully discussed in our analysis of Point V below.

Third, Oglesby failed to establish how access to the DSS records would have aided or improved his defense, given that the records were likely inadmissible. Oglesby claims that the DSS records would have focused on false allegations by the girls against other

_____

[10] In his brief, Oglesby admits that his counsel did know about these three incidents.

caregivers and foster family members, which would carry more weight in attacking the credibility of the children's claims of abuse by Oglesby. But, in order for extrinsic evidence of prior false allegations to be admissible, Oglesby would need to establish that (1) prior allegations were made, (2) they were false, and (3) the children knew the allegations were false when made. *State v. Kerksiek*, 670 S.W.3d 32, 40 (Mo. App. W.D. 2023). The DSS records could not do this. At best, they could establish that prior allegations were made, but they could not establish either that those allegations were false or that the children knew them to be false when made. At most, the records demonstrate that unsubstantiated allegations were made. But the fact that an agency's investigation does not substantiate a claim does not prove that the claim was false. *State v. Thompson*, 341 S.W.3d 723, 733 (Mo. App. E.D. 2011) ("The fact that an agency determined that a witness's prior allegations were unfounded does not alone demonstrate that those allegations were false."). And "a prior report of sexual abuse that Appellant failed to show was false does not 'speak to,' does not 'b[ear] on,' and is not 'relevant' to the 'ultimate issue of a witness's credibility.'" *State v. Abbott*, 412 S.W.3d 923, 929-30 (Mo. App. S.D. 2013) (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 677-78 (Mo. banc 2010)).

Even if the DSS records were admissible for purposes of impeachment, Oglesby did not overcome the presumption that counsel's decisions were sound trial strategy. Trial counsel, who had over forty years in practice and had handled approximately 100 criminal trials, testified that he used a "minimalistic style" at trial, asking only the questions that "need to be asked." Trial counsel testified at the evidentiary hearing that,

despite having access to the "wealth of evidence" he obtained from representing Oglesby in family court, he chose to impeach the children's credibility on cross-examination by having them "paint themselves as liars." Trial counsel's strategy was driven in part by his experience with cross-examination of child victims and in part by the fact that, in the first trial, he had taken the same approach in cross-examining the two girls who had testified (Child 1 and Child 2), and it had resulted in acquittal on four counts and a mistrial on the other four counts. Trial counsel testified that, during cross-examination at the second trial, he got all three children to "call themselves liars on the stand . . . multiple times."

Based on the record, we cannot conclude that trial counsel was ineffective in failing to obtain or use DSS records. The record does not disclose that trial counsel did not have these records. Regardless, trial counsel made the strategic decision not to use evidence of specific incidents to demonstrate that the children had lied in the past. Trial counsel instead elected a straight-forward approach to address the children's truthfulness. He expressly testified, "I felt strategically that these girls had lied so many times that it was difficult to . . . take all of that stuff that was coming in and . . . paint them as liars when I thought I had enough evidence that they painted themselves as liars." Counsel's strategic decision was not so unreasonable as to support a finding that the motion court clearly erred in denying Oglesby's claim of ineffective assistance.

13

**B. Oglesby failed to establish that trial counsel was ineffective in failing to call the therapist to testify in Oglesby's second trial.**

To prove that trial counsel was ineffective in failing to call a witness or present evidence, the movant must show:

> (1) trial counsel knew or should have known of the existence of the witness or evidence; (2) the witness or evidence could be located through reasonable investigation; (3) the witness would testify or the evidence would be admissible; and (4) the witness's testimony or evidence would have produced a viable defense.

*Sousley v. State*, 674 S.W.3d 470, 477 (Mo. App. W.D. 2023). "Ordinarily, the failure to call a witness will not support an ineffective assistance of counsel claim because the choice of witnesses is presumptively a matter of trial strategy." *McFadden v. State*, 619 S.W.3d 434, 455 (Mo. banc 2020) (quoting *Tisius v. State*, 519 S.W.3d 413, 427 (Mo. banc 2017)). And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Here, trial counsel knew about the therapist but was precluded from presenting her testimony at Oglesby's first trial. *Oglesby*, 621 S.W.3d at 514-15. In Oglesby's second trial, counsel overcame the State's motion *in limine* and was granted permission by the trial court to present evidence "regarding RAD and whether [Child 1] had a diagnosis of RAD." *Id.* at 518. But trial counsel chose not to present the therapist's testimony in the second trial. Oglesby argues that this decision amounted to ineffective assistance of counsel. Again, however, Oglesby fails to overcome the presumption that counsel's decision was based on reasonable trial strategy.

14

When addressing the issue in Oglesby's second trial, the prosecutor expressed serious skepticism as to whether the therapist could have diagnosed Child 1 with RAD, arguing the possibility that "this could evolve into a minitrial of whether or not [Child 1] has this disorder." *Id.* at 517. And the therapist, herself, indicated that her assessment of Child 1 was four years before Oglesby's trial, that she had not provided therapy to Child 1 in over two years, and that "[a] person with RAD can learn to recognize and control their emotions and actions that are symptomatic of their attachment disorder," meaning that, even if Child 1 exhibited RAD symptoms four years earlier, that did not mean she was displaying them at the relevant time. *Id*. at 520. And the State presented testimony at the Rule 29.15 hearing from a clinical psychologist that Child 1 suffered from post-traumatic stress disorder, not RAD. A seasoned defense lawyer such as trial counsel could have anticipated that presentation of the therapist's testimony might have resulted in a trial within a trial and that the therapist's testimony could be seriously undermined by either cross-examination or rebuttal testimony. And, in any event, trial counsel had already gotten Child 1 to admit that she lied, and the decision not to present additional evidence as to a questionable diagnosis of RAD was a matter of sound trial strategy.

Because trial counsel's assistance was not deficient, we need not address the prejudice prong of the *Strickland* test, and the motion court's judgment on these points was not clearly erroneous. Points I and II are denied.

15

**II.** **The motion court did not clearly err in finding trial counsel was not ineffective in failing to move for dismissal of the June 2018 indictment on grounds of prosecutorial vindictiveness (Point III).**

To prevail on a claim of ineffective assistance of counsel based on counsel's failure to file a motion to dismiss, a movant must demonstrate that, had counsel filed such a motion, the trial court would have dismissed the case. *Sinks v. State*, 699 S.W.3d 506, 513 (Mo. App. E.D. 2024). Here, Oglesby cannot show that a dismissal motion would have been granted.

A claim of prosecutorial vindictiveness requires proof that "the additional charges were brought solely to penalize [the defendant] for exercising his constitutional rights and cannot be justified as a proper exercise of prosecutorial discretion." *State v. Buchli*, 152 S.W.3d 289, 309 (Mo. App. W.D. 2004) (quoting *State v. Miller*, 981 S.W.2d 623, 629 (Mo. App. W.D. 1998)). "The test for prosecutorial vindictiveness is whether the facts show a realistic likelihood of vindictiveness in the prosecutor's augmentation of charges." *State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999). "A presumption of vindictiveness will not apply 'if any objective event or combination of events in the proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of the charges was motivated by some purpose other than a vindictive desire to deter or punish . . . .'" *Oglesby*, 621 S.W.3d at 512 (quoting *State v. Potts*, 181 S.W.3d 228, 236 (Mo. App. S.D. 2005)).

Here, trial counsel raised prosecutorial vindictiveness in his motion for new trial, but he did not seek a pre-trial dismissal of the June 2018 indictment. On direct appeal, this court found that the prosecutorial vindictiveness claim was waived because it was not

16

raised until post-trial. However, in affirming Oglesby's conviction on direct appeal, we also held that the prosecutor's "[s]trategically choosing to hold some charges in abeyance cannot, by itself, prove prosecutorial vindictiveness; and, even where a presumption of prosecutorial vindictiveness is applied, the prosecutor is still given an opportunity to offer an objective explanation." *Oglesby*, 621 S.W.3d at 511-12.

At the motion hearing, the State presented evidence that the additional seven charges in the June 2018 indictment required testimony from all three children about their own experiences of abuse, whereas the first trial concerned only the abuse of Child 1. The prosecutor, knowing the stress that all three children had suffered after being deposed before the first criminal trial, testified that there were "a lot of concerns about the toll" that testifying in court would cause especially for Child 3, who manifested physical symptoms of trauma after her deposition, and also for Child 2, who would have to testify about her own abuse if those additional charges were filed. Thus, the evidence indicated that the decision to initially charge Oglesby with crimes only as to Child 1, holding additional charges in abeyance, was motivated by concern for the victims. And, that the decision to pursue those additional charges later, after Oglesby was found not guilty of some charges as to Child 1, was motivated by some purpose other than a vindictive desire to deter or punish.

Despite the lack of evidence to show a "reasonable likelihood of vindictiveness" by the prosecutor regarding the June 2018 indictment, Oglesby argues that trial counsel should have filed the motion to dismiss anyway because he had "everything to gain and nothing to lose." But trial counsel cannot be found ineffective for "failing to file a

17

meritless motion." *Harden v. State*, 415 S.W.3d 713, 719 (Mo. App. S.D. 2013) (quoting *State v. Neal*, 849 S.W.2d 250, 258 (Mo. App. W.D. 1993)). There was no merit to a motion to dismiss based on prosecutorial vindictiveness, given the reasonable explanations by the State for the June 2018 indictment that the motion court accepted in denying this claim. As the motion court here was also the trial court, there can be no doubt that the trial court would have denied the motion to dismiss. Because Oglesby cannot show that trial counsel acted deficiently in failing to file a motion to dismiss, we find that the motion court did not clearly err in denying the Rule 29.15 motion's claim based on prosecutorial vindictiveness. Point III is denied.

### III.    Point IV is fatally defective because it fails to comply with Rule 84.04(d).

Oglesby's Point IV does not comply with Rule 84.04(d)(1)(A)'s requirement that "each point shall . . . [i]dentify the [motion] court ruling or action that the appellant challenges." Oglesby's Point IV simply contends that "Appellants convictions were secured in violation of his right to due process of law" because of "the State's" failure to produce the DSS documents. The point fails to identify *any* ruling or action by the motion court that Oglesby challenges. *See, e.g., Republic Fin., LLC v. Ray*, 698 S.W.3d 184, 187-88 (Mo. App. E.D. 2024) (refusing to review a purported *Brady* claim raised in points alleging (a) the trial court "erred by not allowing the Appellant his right to Discovery" and (b) the trial court "erred in not allowing . . . Appellant his right to Due Process" because neither point "identif[ied] the specific trial court action that is error").

"In framing a point on appeal, an appellant must '[i]dentify the [motion] court ruling or action that the appellant challenges,'" as "[w]e are unable to review a ruling

never made." *Barnett v. Columbia Maint. Co.*, 632 S.W.3d 396, 409 (Mo. App. E.D. 2021) (quoting Rule 84.04(d)(1)). "Points which do not state what ruling of the [motion] court is challenged nor provide a proper evidentiary basis, but instead set out abstract statements of law, preserve nothing for appeal." *McDonald v. McDonald*, 946 S.W.2d 743, 745 (Mo. App. S.D. 1997) (quoting *Jones v. Wolff*, 887 S.W.2d 806, 808 (Mo. App. E.D. 1994)).

Here, because Oglesby's Point IV does not identify any ruling or action by the motion court for us to review, we are left to speculate as to his claim of error. "Deficient points relied on force respondents and appellate courts to search the briefs and the record to determine appellant's assertions, which wastes judicial resources and creates the danger that appellate courts interpret the appellant's arguments differently than the appellant intended . . . ." *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017). Even if we were to look to the argument portion of Oglesby's brief to identify the claim of error raised, we would be left to speculate as to the nature of his claim. In the first line of his Point IV argument, Oglesby states that the "motion court's failure to provide [Oglesby's] counsel" with the unredacted records caused a *Brady* violation. If Oglesby's claim of motion court error is that the motion court failed to provide him with the unredacted DSS records, that is not a *Brady* claim. And if Oglesby's claim of error is the effect of the alleged discovery violation on the Rule 29.15 case, that claim is addressed in Point V. Oglesby's Point IV does not adequately raise a claim of error.

Our Supreme Court has recently cautioned that, to reiterate the importance of Rule 84.04 "without enforcing any consequence 'implicitly condones continued

violations and undermines the mandatory nature of the rules.'" *State v. Minor*, 648 S.W.3d 721, 728-29 (Mo. banc 2022) (quoting *Alpert v. State*, 543 S.W.3d 589, 601 (Mo. banc 2018) (Fischer, J., dissenting)).  Accordingly, Oglesby's Point IV is denied.

**IV.    The motion court did not clearly err in denying Oglesby's motion to compel production of unredacted DSS records (Point V).**

In Point V, Oglesby claims the motion court erred in denying his motion to compel production of the unredacted DSS records in full, which denied him "the factual tools necessary" to prove "his *Brady*[11] and *Strickland* claims raised in Points I and IV."

But Oglesby was never entitled to these documents.  "A defendant is not entitled to confidential records . . . on the mere possibility that the records may contain favorable and material information." *State v. Brown*, 701 S.W.3d 917, 927 (Mo. App. S.D. 2024).  The DSS records are required to be kept confidential pursuant to § 210.150.  Records made confidential by § 210.150 are not "open to inspection" except by "order of the court to persons having a legitimate interest therein." *Brown*, 701 S.W.3d at 926 (quoting § 211.321.1).

Oglesby relies on *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), but nothing in *Ritchie* requires the disclosure of confidential records unless the court, after an *in camera* review, orders them disclosed. *See id.* at 60 (holding that both the defendant's and the State's interest in "ensuring a fair trial can be protected fully by requiring that the [confidential documents] be submitted only to the trial court for *in camera* review,"

---

[11] Oglesby failed to preserve Point IV, and his Point I (alleging ineffective assistance) raises no *Brady* claim, therefore we find *Brady* irrelevant regarding this Point.

despite the denial to defendant of an "advocate's eye" in reviewing the records). The Supreme Court explained the state's "compelling interest in protecting child-abuse information":

> Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. [Others] who suspect abuse also will be more willing to come forward if they know that their identities will be protected . . . and . . . that they may speak to [Children's Division] counselors without fear of general disclosure.

*Ritchie*, 480 U.S. at 60-61.

Therefore, "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id*. at 59. To ensure a fair trial, the court may conduct an *in camera* review of the confidential documents, *see Brown*, 701 S.W.3d at 927, which is what the motion court did here.[12] Oglesby had no right to independently review these documents. Section 210.150, in pertinent part, identifies those who have the right of access to confidential documents: (1) Oglesby, as to records in which he is the "alleged perpetrator," § 210.150.2(5); and (2) the prosecutor "involved in the investigation of child abuse or neglect . . . with a need for such information in order to carry out its responsibilities . . . to protect children from abuse or neglect,"

---

[12] The motion court ordered that DSS produce only those documents that had been redacted in compliance with § 210.150's disclosure requirements. Although the motion court did not disclose what it found in its review, the documents were included in the record here, and our review confirms that there is no evidence in the unredacted documents that any allegations of abuse by these children were false.

21

§ 210.150.2(6). The redacted DSS records fell into neither of those categories here.[13] Both § 210.150 and the motion court's order required DSS to produce only redacted records that excluded information that Oglesby could not legally obtain.

Moreover, Oglesby can show no resulting prejudice from the motion court's denial of his motion to compel, all as more fully discussed in our analysis of Point I above. Rule 84.13(b) requires that, to be reversible, an error must "materially affect[] the merits of the action." Therefore, prejudice is required to show reversible error based on a denial of discovery. *See Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 173 (Mo. App. W.D. 2021) (requiring proof not just of error but also that appellant was "*actually* prejudiced as a result of [the] erroneous ruling or action"). The evidence at the Rule 29.15 hearing was that trial counsel had access to many DSS records. Although trial counsel testified that he did not recall receiving records regarding three specific incidents, that alone does not demonstrate that counsel did not have the relevant DSS records. Oglesby did not put on evidence of what DSS records trial counsel did have access to. Although both the motion court and this court had access to the DSS records for *in camera* review, without evidence of what records trial counsel had, there is no way to determine if there were DSS records that trial counsel did not have and therefore, no way to determine prejudice based on the alleged failure to investigate or obtain the records.

---

[13] We reach this conclusion based on our review of the unredacted DSS records.

Therefore, based on our review of the entire record, we find no clear error by the motion court's denial of Oglesby's motion to compel the production of records and we deny Point V.

### Conclusion

Based on the foregoing, the judgment of the motion court is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Thomas N. Chapman, Judge, concur.